## UNITED STATES v. HOPEWELL et al.

*(Circuit Court of Appeals, First Circuit. September 15, 1892.)*

1. CUSTOMS DUTIES—CLASSIFICATION—COMMON GOAT HAIR.
   Under the tariff act of 1890, common goat hair, even if not fit for combing, is dutiable at 12 cents a pound, under Schedule K, par. 377, class 2, and is not embraced in paragraph 604 of the free list. 48 Fed. Rep. 630, reversed.

2. CIRCUIT COURT OF APPEALS—JURISDICTION—REVENUE APPEALS.
   Under the judiciary act of March 3, 1891, (26 St. at Large, p. 828,) a judgment of the circuit court, on an appeal from the decision of the board of general appraisers, is reviewable, not in the supreme court, but in the circuit court of appeals, the case being one "arising under the revenue laws."

3. SAME—APPEAL—IRREGULARITIES—AMENDMENT.
   An appeal by the United States from the judgment of the circuit court, on an appeal from the board of general appraisers, can only be allowed on the application and in the name of the attorney general, when the record does not show that the court is of opinion that the question involved is of such importance as to require an appeal. But where such an appeal is irregularly taken, in the name of the collector of the port by the district attorney, and the parties admit, in the circuit court of appeals, that same was in fact taken by direction of the attorney general, and consent that the petition for appeal may be amended, by substituting his name for that of the collector, the circuit court of appeals has jurisdiction to allow such amendment.

4. APPEAL—CITATION—PARTNERSHIP.
   On such an appeal it is an irregularity to address the citation to the importing firm instead of to the individual partners, but such irregularity is cured by the general appearance of the partners in the appellate court without making any objection.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Petition for a review of a decision of the board of general appraisers assessing a duty of 12 cents a pound on certain goat hair. The circuit court reversed such decision, holding that the hair was embraced in the free list. 48 Fed. Rep. 630. The United States appeals. Reversed.

*Frank D. Allen*, U. S. Atty., and *Henry A. Wyman*, Asst. U. S. Atty.

*Josiah P. Tucker*, for appellees.

Before GRAY, Circuit Justice, PUTNAM, Circuit Judge, and NELSON, District Judge.

GRAY, Circuit Justice. This was a petition to the circuit court by John Hopewell, Jr., Olindus F. Kendall, and Frank Hopewell, representing that they were "partners in trade, doing business in Boston under the firm name of L. C. Chase & Co.," and signed, "L. C. Chase & Co., Petitioners, by J. P. Tucker, Attorney," praying for a review, under the act of June 10, 1890, c. 407, § 15, of a decision of the board of general appraisers, affirming a decision of the collector of the port of Boston and Charlestown, assessing on two bales of goat's hair, imported by the petitioners, a duty at the rate of 12 cents a pound, under paragraphs 377 and 384 of Schedule K of the tariff act of October 1, 1890, c. 1244, imposing such a duty on "hair of the camel, goat, alpaca, and other like animals." The petitioners, having duly protested against the assessment, contended that their goods should have been

admitted free, under paragraph 604 of the free list, as "hair of horse, cattle, or other animals," "not specially provided for in this act."

The board of general appraisers, pursuant to an order of the court, made a return of the record and evidence, together with a certified statement of facts involved, and of their decision thereon, by which it appeared that the appraisers found "that the article in question is common goat hair, and that it is unfit for combing purposes," and that their decision that it was duly assessed was based on their former decision in a like case. General Appraisers' Decisions, Nos. 280, 691. Under another order of the court, referring the case to one of those appraisers to take and return such further evidence as might be offered by the petitioners or by the collector, he returned that the only evidence offered by either party was a stipulation, which was signed by counsel, and was as follows:

"If material, it is agreed that wool known as Leicester, Cotswold, Lincolnshire, Down combing wools, Canada long wools, and hair of the camel and alpaca, are all fit, adapted, and used for combing purposes; that there are kinds or breeds of goat, like the Cashmere and Angora, which produce hair fit and adapted for combing purposes; that the goat hair in this case is similar in its use and adaptability to use to the hair of horses and cattle."

The circuit court, for the reason stated in the opinion of COLT, J., printed in 48 Fed. Rep. 630, adjudged that the decision of the board of general appraisers be reversed, and that the sums paid by the petitioners for duties be refunded. Within 30 days after that judgment the United States, "by the collector of the port of Boston and Charlestown," appealed to this court; and the petition to the circuit court for the allowance of the appeal, as well as the assignment of errors, was signed by the district attorney of the United States, as "attorney for the collector." The circuit court thereupon allowed the appeal, and issued a citation to "L. C. Chase & Co., a firm doing business in Boston, in the state and district of Massachusetts, in which firm John Hopewell, Jr., O. F. Kendall, and Frank Hopewell are the partners;" and sufficient service of this citation was acknowledged by the attorney for the appellees.

By sections 14 and 15 of the act of June 10, 1890, c. 407, entitled "An act to simplify the laws in relation to the collection of the revenues," the question of the rate and amount of duties chargeable on imported goods, which might previously have been tried by suit against the collector, is to be tried by appeal from his decision to the board of general appraisers constituted by that act; the decision of that board may be reviewed by the circuit court on application of either party; and that court, when it is of opinion that the question involved is of such importance as to require it, may allow an appeal from its decision to the supreme court of the United States, "but an appeal shall be allowed on the part of the United States whenever the attorney general shall apply for it within thirty days after the rendition of such decision." 26 St. 131, 137, 138. But since the judiciary act of March 3, 1891, c. 517, took effect, the case being one "arising under the revenue laws,"

the appeal from the judgment of the circuit court lies to this court: 26 St. p. 828; *U. S.* v. *Hill,* 123 U. S. 681, 8 Sup. Ct. Rep. 308; *Lau Ow Bew* v. *U. S.,* 144 U. S. 47, 12 Sup. Ct. Rep. 517; *Warehouse Co.* v. *Collector of Customs,* 49 Fed. Rep. 561.

In the case at bar the appeal of the United States from the judgment of the circuit court was irregularly taken in the name of the collector of the port. It should have been in the name of the United States, and, as the record does not show that the circuit court was of opinion that the question involved was of sufficient importance to require an appeal, it could be allowed only on the application of the attorney general of the United States. But, the irregularity having been suggested by this court at the hearing, a motion in writing has since been made by the district attorney "for and on behalf of the attorney general of the United States," to amend the petition for appeal and the assignment of errors, by striking out the statement that the appeal was taken by the collector, by stating that it was "upon the application of the attorney general of the United States," and by substituting, for the original signature, the following: "William H. H. Miller, Attorney General of the United States, by Frank D. Allen, U. S. Attorney District of Massachusetts." And the appellees, in open court, have consented to the amendment, and have admitted that the appeal was in fact taken by direction of the attorney general, and that this fact was brought to the attention of the circuit court before it allowed the appeal. By the appeal taken in behalf of the United States by their district attorney, this court acquired jurisdiction of the case, and has power to allow amendments in regard to the officer by whom or in whose name the appeal was claimed. When any question is made as to the allowance of such an amendment, the usual and proper practice is to remand the case to the circuit court to deal with that question. But when, as in this case, the parties agree to the amendment, and to facts which justify and require it, the amendment may be made in the appellate court. Rev. St. §§ 954, 1005; *Fletcher* v. *Peck,* 6 Cranch, 87, 127; *Kennedy* v. *Bank,* 8 How. 586, 611; *Gates* v. *Goodloe,* 101 U. S. 612; *Bowden* v. *Johnson,* 107 U. S. 251, 2 Sup. Ct. Rep. 246. The record is therefore to be amended as prayed for.

There was also an irregularity in addressing the citation to the firm in which the appellees were partners, when it should have been addressed to the appellees individually. But this mistake, if objected to, might have been cured by a new citation in proper form. *Moore* v. *Simonds,* 100 U. S. 145; *Estis* v. *Trabue,* 128 U. S. 225, 9 Sup. Ct. Rep. 58. The appellees having appeared generally in this court, without taking any objection, this irregularity becomes immaterial.

The duties in this case were assessed under paragraph 384 of Schedule K of the tariff act of 1890, which imposes a duty of 12 cents a pound "upon all wools or hair of the second class," described in paragraph 377, as follows: "Class two, that is to say, Leicester, Cotswold, Lincolnshire, Down combing wools, Canada long wools, or other like combing wools of English blood, and usually known by the terms herein

used, and also hair of the camel, goat, alpaca, and other like animals." 26 St. pp. 594, 595. The question is whether, as held by the board of general appraisers, the article imported by the appellees came within those paragraphs, as "hair of the goat;" or whether, as held by the circuit court, it fell within paragraph 604 of the free list, which exempts from duty "hair of horses, cattle, and other animals, cleaned or uncleaned, drawn or undrawn, but unmanufactured, not specially provided for in this act." Id. p. 606. The facts found in the record, and on which this case must be decided, are that the wools specified in class 2, as well as the hair of the camel and of the alpaca, are all fit, adapted, and used for combing purposes; that there are breeds of goat, such as the Cashmere and the Angora, which produce hair fit for combing purposes; but that the goat hair in this case is common goat hair, unfit for combing purposes, and similar in its adaptability and use to the hair of horses and cattle.

Upon the face of the act of 1890, and according to the clear and unambiguous meaning of its words, no wools, indeed, are included in class 2, except combing wools, or wools fit for combing; but there is no such restriction with regard to hair; and "hair of the camel, goat, alpaca, and other like animals," is subjected to a uniform duty of 12 cents a pound, to whatever uses or purposes it is or may be adapted; and goat's hair, being thus specified as subject to a particular rate of duty, is not comprehended in the clause relating to hair "not specially provided for in this act." *Seeberger* v. *Cahn*, 137 U. S. 95, 11 Sup. Ct. Rep. 28; *Twine Co.* v. *Worthington*, 141 U. S. 468, 12 Sup. Ct. Rep. 55. This is hardly denied by the appellees. But they contend that a different result must be reached by comparing this act with previous tariff acts, and with the practical construction which those acts had received. It will be convenient, therefore, briefly to review the legislation upon this subject. By the tariff acts of 1861 and 1864, "all wool unmanufactured, and all hair of the alpaca, goat, and other like animals, unmanufactured," were subject to a duty, varying according to the value of the article. The duties imposed by the act of 1861 were 5 per cent. *ad valorem* if the value was less than 18 cents a pound, 3 cents per pound if the value was more than 18 and not exceeding 24 cents a pound, and 9 cents per pound if the value was more than 24 cents a pound. The act of 1864 imposed duties of 3 cents per pound if the value was 12 cents or less a pound, and an increasing scale of duties per pound as the value was greater, and also, if the value exceeded 24 cents a pound, 10 per cent. *ad valorem.* Acts March 2, 1861, c. 68, § 12, (12 St. p. 183;) June 30, 1864, c. 171, § 4, (13 St. p. 206.)

The tariff act of 1867 (re-enacted in the Revised Statutes) and the act of 1883 divided "all wools, hair of the alpaca, goat, and other like animals" into three classes, "for the purpose of fixing the duties to be charged thereon;" and those acts did not substantially differ from each other, or from the earlier acts, in any other particular bearing on this case, except in the amount of the duties imposed. The act of 1867 imposed on "wools of the second class, and upon all hair of the alpaca,

goat, or other like animals," the value of which was 32 cents or less a pound, a duty of 10 cents per pound and also 11 per cent. *ad valorem*, and, if the value was greater, a duty of 12 cents per pound and 10 per cent. *ad valorem*. The act of 1883 differed only in substituting "thirty" for "thirty-two," and in omitting the additional *ad valorem* duty. Act March 2, 1867, c. 197, (14 St. p. 559;) Rev. St. § 2504, Schedule L, pp. 470, 471; Act March 3, 1883, c. 121, § 6, (22 St. p. 508.)

The material provisions of paragraphs 375–378 of Schedule K of the tariff act of 1890, and of the corresponding paragraphs of the same schedule of the act of 1883, are as follows, those words of the act of 1883 which are omitted in the act of 1890 being printed in italics, and the new words of the existing act being inclosed in brackets:

"[375.] All wools, hair of the *alpaca, goat*, [camel, goat. alpaca,] and other like animals shall be divided, for the purpose of fixing the duties to be charged thereon, into the three following classes:

"[376.] Class One—*Clothing Wools*. That is to say, merino. mestiza, metz, or metis wools, or other wools of merino blood, immediate or remote, Down clothing wools, and wools of like character with any of the preceding, including such as have been heretofore usually imported into the United States from Buenos Ayres, New Zealand, Australia, Cape of Good Hope, Russia, Great Britain, Canada, and elsewhere, and also including all wools not hereinafter described or designated in classes two and three.

"[377.] Class Two—*Combing Wools*. That is to say, Leicester, Cotswold, Lincolnshire, Down combing wools, Canada long wools, or other like combing wools of English blood, and usually known by the terms herein used; and also *all* hair of the *alpaca, goat*, [camel, goat, alpaca,] and other like animals.

"[378.] Class Three—*Carpet Wools and Other Similar Wools. Such as* [that is to say] Donskoi, native South American, Cordova, Valparaiso, native Smyrna, [Russian camel's hair,] and including all such wools of like character as have been heretofore usually imported into the United States from Turkey, Greece, Egypt, Syria, and elsewhere."

The construction of the acts of 1867 and 1883 was by no means so clear, or so well settled, as to afford a safe guide in the decision of this case. Whether those acts are considered by themselves, or in connection with the earlier legislation, there is certainly strong ground for the argument that the titles "Clothing Wools," "Combing Wools," and "Carpet Wools and Other Similar Wools," were inserted by way of convenient classification only, and not by way of description or definition of the nature or use of the articles ranged under any class, and that congress did not intend to make any kind of goat's hair free. The only legal opinions, cited at the bar, (besides that of the circuit court in the present case,) in favor of the opposite view, were given under the act of 1883, and consist of two rulings, no reasons for which are reported, of Judge BUTLER, district judge for the eastern district of Pennsylvania,—the one in *U. S.* v. *McNeely*, referred to in Treas. Dec. 1887, (No. 7,999,) and the other in *Dobson* v. *Cooper*, 46 Fed. Rep. 184; and an opinion of the attorney general to the secretary of the treasury, January 15, 1887, proceeding upon the misconception that the words "alpaca, goat," in the act of 1883, described, not two animals, but one only, an "alpaca goat,"

whereas the alpaca is of the llama tribe, and more akin to the camel than to the goat; and upon the consequent misconstruction that the whole clause included only animals producing hair or wool like said "alpaca goat." 18 Op. Attys. Gen. 527. The rulings of the treasury department upon the extent of the second class of wools and hair, under the acts in force from 1867 to 1890, were varying and contradictory. Under the act of 1867, rulings were made that some kinds of goat's hair, not fit for combing, did not come within class 2. Treas. Dec. Nos. 4,108, 5,743, 6,707. And it was consequently assumed, in the tariff compilation, reported by a committee of the senate, January 7, 1884, that "goat's hair, unfit for combing or weaving," and "goat's hair, common," as well as camel's hair, were not dutiable under the act of 1883. 48th Cong. 1st Sess. Senate Report, No. 12, p. 108. Yet in 1885 and 1886 it was repeatedly ruled by Assistant Secretary Fairchild that, by the clear words of Schedule K of the act of 1883, all goat hair was dutiable at the same rate as wools of the second class. Treas. Dec. Nos. 6,998, 6,999, 7,544, 7,614. The subsequent ruling of Secretary Manning to the contrary appears to have been based on the opinions of Judge BUTLER and of the attorney general, above mentioned. Id. No. 7,999.

But, whatever may have been the true construction of former acts, it is manifest that the provision on this subject in the existing tariff act must be construed, not as a mere revision or re-enactment of prior ones, but as a new enactment, laying down its own rule, and clearly expressing its own meaning. In the second class, it omits the title "combing wools," the only expression which had afforded color for holding that no hair was included which was not fit for combing. It afterwards uses the word "combing" in connection with wools only; and in the clause relating to hair the word "camel" is inserted, and the words "alpaca" and "goat" are transposed, so as to preclude all misapprehension as to what animals are specified. While it puts "Russian camel's hair" in the third class, it makes no provision as to goat's hair, except the general one in the second class; and it subjects all hair included in this class to a fixed duty of 12 cents a pound. In short, the present act not only clearly directs that all goat hair, without regard to its value, or to the purposes for which it is used or suitable, shall be subject to a duty of 12 cents a pound, but it avoids every form of expression which had created doubt or difficulty in the construction of earlier acts upon this subject. The inevitable conclusion appears to us to be that, under the tariff act of 1890, goat's hair, even if not fit for combing, is subject to a duty of 12 cents a pound. Record of appeal amended as prayed for. Judgment of the circuit court reversed, and case remanded to that court, with directions to affirm the decision of the board of general appraisers.