## BURGET v. ROBINSON.

### (Circuit Court of Appeals, First Circuit. May 1, 1903.)

#### No. 404.

1. CIRCUIT COURTS OF APPEALS—REHEARINGS—TIME FOR FILING PETITION.
    The requirement of rule 29 of the Rules of the Circuit Court of Appeals, that a petition for rehearing shall be filed within one calendar month after judgment is entered, and at the same term, unless by leave granted during the term or in case the entry is less than a month before adjournment, is for the protection of the court, and may be waived by the court when justice requires.

2. SAME—EFFECT OF ORDER STAYING MANDATE.
    The effect of an order of a Circuit Court of Appeals staying a mandate after judgment indefinitely is to retain jurisdiction of the cause in that court, and the power to grant a rehearing, even after the term, so long as the mandate has not issued.

3. SAME—DENIAL OF WRIT OF CERTIORARI BY SUPREME COURT.
    Where an application to the Supreme Court for a writ of certiorari to a Circuit Court of Appeals, presenting the identical issues which were determined by that court, has been summarily denied, unless in exceptional cases, it must be assumed that the Supreme Court has impliedly passed on such issues, and the Circuit Court of Appeals is precluded from proceeding anew on the same subject-matter by entertaining a petition for a rehearing.

In Error to the Circuit Court of the United States for the District of Massachusetts.

John W. Corcoran, William B. Sullivan, and Crosby & Noxon, for plaintiff in error.

Stiles W. Burr and John W. Saxe, for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge.   The particular matter before us is a petition for rehearing which we gave the plaintiff in error special leave to file on February 4, 1903.  By our direction, both parties have filed briefs in reference thereto, and the matter is now before us so far as we have any jurisdiction over the same.   The judgment below was against the plaintiff in error, who was the defendant below.   That judgment was affirmed by us on January 24, 1902 (51 C. C. A. 488, 113 Fed. 669), which was at the October, 1901, term of this court.   On October 20, 1902, which was after the close of our October term, 1901, the plaintiff presented to the Supreme Court a petition for a writ of certiorari, and on January 19, 1903, that court denied the petition. The same day that court handed down an opinion in Hale v. Allison, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. ——, the effect of which was to overrule some of the conclusions of law which this court reached according to its opinion passed down in Hale v. Hardon on May 31, 1899, and reported in 37 C. C. A. 240, 95 Fed. 747.   Our opinion in

¶ 3. Certiorari from Supreme Court to Circuit Court of Appeals, see note to Lau Ow Bew v. United States, 1 C. C. A. 5.

the present case, passed down on January 24, 1902, contained the following expression:

"With the exception of a single particular, the case involves questions disposed of by us in Hale v. Hardon, 37 C. C. A. 240, 95 Fed. 747, and is determined by it."

Notwithstanding the plaintiff in error presented to the Supreme Court its petition for certiorari, and the same was held by that court for three months, and was then denied on the same day that it passed down its conclusions in Hale v. Allison, he insists that we have pronounced, in the words which we have cited from our opinion, that the question involved on this writ of error is exactly the same as that decided in Hale v. Hardon, so that, although his petition for certiorari was denied, yet the Supreme Court, by its decision in Hale v. Allison, has in effect determined that the judgment below against him should have been reversed; and he therefore asks us, on this petition for rehearing, to reopen the case.

The first difficulty comes from the fact that our judgment was entered at the October term, 1901, while this petition was not presented until the October term, 1902. The rule of this court (rule 29), so far as anything here is concerned, is substantially the same as the corresponding rule of the Supreme Court, and reads as follows:

"A petition for a rehearing after judgment may be filed at the term at which the judgment is entered, and within one calendar month after such entry, and not later, unless by leave granted during the term." 31 C. C. A. lix, 90 Fed. lix.

The rule also provides for the contingency of a judgment being entered within less than one month before the term adjourns, in which event the petition for rehearing may be filed within the month after the entry of judgment, and with the same effect after the term as though filed before adjournment.

For reasons which justified it, on March 13, 1902, which was during our October term, 1901, an order was entered staying the mandate, and, on May 22, 1902, which was still during our October term, 1901, the defendant having made a motion that a mandate issue, a supersedeas bond was given by our order, and thereupon mandate was again stayed, each time indefinitely. On January 21, 1903, a copy of the order of the Supreme Court denying the petition for certiorari was filed with us, and on the next day a motion for a mandate was presented. On February 4, 1903, as we have already said, this petition for rehearing was filed by our leave, and the order made in reference to the briefs which we have already referred to. It is not necessary to state, but we will state, that our granting leave to file the petition foreclosed no question whatever, and was not intended to.

The first question is whether, under rule 29, in connection with the ordinary rules of law, we have any power to grant this petition. This question divides into two—one of which is whether we are bound by the letter of the rule to the effect that such a petition should have been presented at the October term, 1901, and could not be filed later, because no leave therefor was granted during that term; and the other is whether, with or without our rules, we have any power to receive this petition at a term subsequent to that at which the judgment was entered.

The requirement that such a petition should be presented during the term at which the judgment was rendered is entirely for the protection of the court. So far as the bar is concerned, it is only a caution as to the necessity of filing a petition during the term at which the judgment was rendered in order to be clearly within one's rights. Being for the protection of the court, clearly it can be waived by it when justice requires. United States v. Breitling, 20 How. 252, 254, 15 L. Ed. 900. That justice requires we should not unnecessarily attempt to shut out the plaintiff in error by any mere arbitrary rule, if he is right in his position as to the effect of the proceedings in the Supreme Court, is too clear to need observation. .

The other branch of the question is also easily disposed of by the effect of our orders staying the mandate. These held the case so far under our hands as to enable us to make such other orders from time to time as justice might require and the law permit, even after the term at which the judgment was entered. Unless this be so, our orders staying mandates would, in the majority of cases where entered, be futile; and the same would be true as to that portion of our rule 32 (31 C. C. A. lx, 90 Fed. lx), which frequently delays a mandate for a considerable period after the term at which a judgment was entered has adjourned.

While we understand that the practice of the Supreme Court is in harmony with our observations, yet no formal decision pro or con on this particular issue has been brought to our attention. It is true that court has apparently, in the most peremptory language, reiterated that it has no power over a case after the term at which judgment was rendered, and no power to entertain a petition for a rehearing unless presented at that term. Hudson v. Guestier, 7 Cranch, 1, 3 L. Ed. 249; Ex parte Sibbald, 12 Pet. 488, 492, 9 L. Ed. 1167; Rice v. Railroad Company, 21 How. 82, 16 L. Ed. 31; Brooks v. Railroad Company, 102 U. S. 107, 26 L. Ed. 91; Hickman v. Ft. Scott, 141 U. S. 415, 419, 12 Sup. Ct. 9, 35 L. Ed. 775; Virginia v. Tennessee, 158 U. S. 267, 271, 15 Sup. Ct. 818, 39 L. Ed. 976. Nevertheless, there are other expressions, as in Browder v. McArthur, 7 Wheat. 58, 5 L. Ed. 397, where it is merely said that it is too late to grant a rehearing after a cause had been remitted to the court below. Of course, all rules stated so broadly are subject to certain limitations and qualifications, and in none of the cases cited did the Supreme Court have occasion to consider the effect of an order staying a mandate, or other similar order. Browder v. McArthur is a notable example of this fact, because, in Bank v. Tennessee, 163 U. S. 416, 426, 16 Sup. Ct. 1113, 41 L. Ed. 211, as the court clearly perceived that it had made an error in its judgment, although the judgment was that of the court, and a mandate had already issued, it was recalled, and the judgment modified. It is also fully settled that there is a general exception to all these rules, where there is a mere error on the part of the clerk, and sometimes where it is plain that the formal judgment was not in fact the judgment which the court intended to enter; and the same as to all similar proceedings, which, in the modern practice, have taken the place of the writ of error coram nobis. We are also of the opinion that there is a like exception in all cases

where the court has expressly stayed the mandate, as in the case at bar. This proposition runs in line with the practice by virtue of which a bill of exceptions may be allowed after the term expires at which the judgment was rendered, if there is any indication that the court, by either special or general order, or in any other way, has reserved the right so to do.

Notwithstanding, under the statute, only a transcript of the record comes up, by theory the record itself is in this court, and remains here until a mandate issues. The decisions in Jugiro v. Brush, 140 U. S. 291, 11 Sup. Ct. 770, 35 L. Ed. 510, and in the cases that have followed it, are not inconsistent herewith, because it will be perceived by turning to pages 295 and 296, 140 U. S., 11 Sup. Ct. 770, 35 L. Ed. 510, that the court rested its conclusions on the specific language of the habeas corpus act. The theory of the law with reference to the custody of the record, after a writ of error has been perfected, was thus stated by us in Jewett v. United States, 41 C. C. A. 88, 100 Fed. 832, 835, 53 L. R. A. 568. In Sampaye v. De Payba, 5 Taunt. 83, Gibbs, afterwards Chief Justice, speaking in the common pleas, from which a writ of error had been taken out to the King's Bench, used emphatic language on this point, saying:

"As soon as the writ of error has operated, the record, though it remain in this court, is mere paper and pack thread. It is as much destroyed as if thrown into the fire."

The matter had been previously and more fully explained to the same effect by Lord Mansfield in Vicars v. Haydon, Cowp. 841, 843. In that case, an application had been made to the Irish court, from which there had been error to the King's Bench, for leave to amend the declaration, which was refused; but the same was allowed in the King's Bench, Lord Mansfield stating what we referred to in Jewett v. United States, that, on a writ of error to Ireland, although only a transcript comes over, in judgment of law the record is removed to the King's Bench. In harmony with this view was the power asserted by the Supreme Court in Kennedy v. Georgia State Bank, 8 How. 586, 610, 611, 12 L. Ed. 1209, to amend the allegations of a bill in equity on appeal. It is true that, at common law, the same court has no such power where the matter may be adversary in its nature. Pacific Railroad v. Ketchum, 95 U. S. 1, 3, 24 L. Ed. 347; Continental Insurance Company v. Rhoads, 119 U. S. 237, 240, 7 Sup. Ct. 193, 30 L. Ed. 380. But, especially in view of Kennedy v. Georgia State Bank, this is probably because of the statutory, and perhaps constitutional, inability of the Supreme Court to try controverted issues of fact on error; for it is clearly settled that that court has an inherent power to permit an amendment of the pleadings where no issue is made between the parties about it, as was explained by us in United States v. Hopewell, 2 C. C. A. 510, 51 Fed. 798, 800.

At the close of our October term, 1901, a general order of continuance was made, as follows:

"It is now here ordered that all causes not decided, and all other business of the term not disposed of, be and the same are hereby continued until next term, subject to and reserving the power and jurisdiction of the court over any cause till mandate issues under rule 32."

This order was entirely in harmony with the rules which we have explained; and in consequence of it, as well as in consequence of the orders staying the mandate to which we have referred, our power to permit the presentation of a petition for rehearing in this case was reserved and continued until this one was brought to our attention. Therefore we are not required to dismiss it for want of jurisdiction over it.

The petitioner claims that his right to proceed in any way before us was suspended, and thus kept alive, by reason of his presentation to the Supreme Court of his petition for certiorari. In this respect, he claims to apply the principle of the extension of the beginning of the period for taking an appeal, or suing out a writ of error, which arises from a petition for rehearing filed as a matter of right, or when such petition is seasonably presented and taken under consideration. There is no sufficient analogy, however, to support this position in all respects. The effect of an application made to the court which has the record is very different from the effect of a like application to a court where no record exists. A writ of certiorari, when granted, operates with reference to questions of this class as a writ of error. Harris v. Barber, 129 U. S. 366, 369, 9 Sup. Ct. 314, 32 L. Ed. 697. But, as pointed out in the same case, the granting of the writ rests in judicial discretion. Where an application for such a writ is made and refused, the result is usually abortive, although undoubtedly the court to which the application is made may meanwhile direct interlocutory orders staying the proceedings below. Therefore the position of the petitioner in this respect is not maintainable, unless there is some consideration of a·special character relating to petitions for certiorari to the Supreme Court under Act March 3, 1891, 26 Stat. 826, c. 517 [U. S. Comp. St. 1901, p. 547], establishing the Circuit Courts of Appeals. We, however, are not obliged to run out this question in all its phases, or to an absolute conclusion, because the petitioner is relieved in reference thereto by the propositions which we have already stated.

Coming, now, to the merits of the petition, it may be observed, first of all, that when a plaintiff or defendant has been defeated, and has applied, either under the rules of the common law or under some statute, to an appellate tribunal for relief with reference to the very particulars passed on by the court in which the litigation was pending, as was the fact at bar, he must ordinarily be assumed to have exhausted his legal remedies if his application is refused, and to be then unable to reopen his case with reference to the same particulars in the court against whose judgment he made application. Of course, with the summary practice of appellate tribunals in determining whether writs of certiorari shall issue where they operate substantially as an appeal, or in determining whether a formal appeal shall be allowed, as in the practice of the judiciary committee of the Privy Council, it is not possible for the court below, if the·application to the appellate tribunal is disallowed, to ascertain judicially the reasons therefor. Nevertheless, where the issues presented before the two tribunals are identical, it would ordinarily be an act of presumption on the part of the court, an appeal from which was sought and refused,

to proceed anew on the same subject-matter, because there arises a strong probability that it would thus proceed contrary to the conclusions of the appellate tribunal, though not expressed. Practical inconvenience and serious hazard, as well as apparent impropriety, would ordinarily be involved in any attempt on the part of this court to proceed further after a petition for a writ of certiorari under the circumstances of that at bar had been denied.

Of course, exceptional cases may arise where, in accordance with the practice of the Supreme Court, which ordinarily refuses a petition for certiorari in the early stages of a case, or in some other way, the fact is disclosed, wherever it can be, that that court has not impliedly passed on any issues raised before us. These exceptions do not apply to the present case, because our judgment was final, and also because, apparently, the Supreme Court gave the subject-matter of the petition for certiorari grave consideration. It was filed, as we have said, on October 20, 1902, and not denied till January 19, 1903, while, on the same day, that court passed down the opinion in Hale v. Allison, to which we have already referred.

Moreover, notwithstanding the expression found in our opinion which we have already cited, to the effect that we observed that, with the exception of a single particular, the case involved questions disposed of in Hale v. Hardon, there was none that there were not other questions involved; and such a statement would not have been correct if it had been made. Hale v. Hardon, like Hale v. Allison, was based entirely on Gen. St. Minn. 1894, c. 76, as pointed out by the opinion of the Supreme Court in the latter case. But the present plaintiff relies both on that statute and on the alleged authority and rights given him by chapter 272, p. 315, of the General Laws of Minnesota for the year 1899, the details of which it is not necessary to recite, except to state that the plaintiff claims that the act of 1899 vested in him a certain title and interest in addition to any rights which could arise under General Statutes of 1894. Nevertheless, inasmuch as the briefs show that, at the trial before us, the defendant conceded that, if Hale v. Hardon should be followed, the right of action of the present plaintiff must be sustained, it was not necessary for us to go beyond the rule established in that case. The Supreme Court, however, in Hale v. Allison, rested one view of the case strictly upon the General Statutes of 1894. While it dwelt on the fact that as, according to the judicial decisions in Minnesota, the plaintiff Hale could not, as receiver, have maintained a suit in his own name in the courts of that state, he could not have any greater rights in foreign courts, yet, in addition thereto, the court observed with reference to his official character as follows:

"Assuming the contractual character of the subscription to the stock of the corporation, the right of the receiver to maintain this suit is not thereby made plainer. The contract may have been to pay, in the event of its insolvency, to the creditors of the corporation, the amount for which the shareholder might be liable up to the par value of his stock. That was a contract in behalf of the creditor, with which the corporation had nothing to do, and the statute did not make this liability assets of the corporation, or confer upon any receiver appointed in the case the right to proceed to enforce it. The cases of Whitman v. Oxford National Bank, 176 U. S. 559 [20 Sup. Ct. 477,

44 L. Ed. 587], and Hancock National Bank v. Farnum, 176 U. S. 640 [20 Sup. Ct. 506, 44 L. Ed. 619], do not bear upon the question, as the plaintiff in each case was the creditor of the corporation."

Referring to the expression, "the statute did not confer upon the receiver the right to proceed to enforce the liability of stockholders," the statute of 1899 is, perhaps, susceptible of a different construction; indeed, of such a construction as to bring this case within Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337, which the Supreme Court also refers to.

We may observe, further, that, while the Supreme Court, with regard to the provisions of the sixth section of the act of March 3, 1891, establishing the Circuit Courts of Appeals, which gives it power to issue writs of certiorari, has not deemed it necessary to make known the general rules which guide it in determining whether to issue such writs, it has given some indications of its methods in reference thereto. That part of the same section which authorizes the Circuit Courts of Appeals to certify questions to the Supreme Court, and the provision authorizing the latter court to issue its writs of certiorari, have alike been uniformly held to apply only when matters of gravity and importance are involved. Forsyth v. Hammond, 166 U. S. 506, 514, 17 Sup. Ct. 665, 41 L. Ed. 1095, and cases there cited. A further disclosure is found in In re Woods, 143 U. S. 202, 206, 12 Sup. Ct. 417, 36 L. Ed. 125. There it is said that the power of issuing writs of certiorari was given by the act of March 3, 1891, as a provision for such supervision "as would tend to avert diversity of judgments and guard against inadvertence of conclusion in controversies involving weighty and serious matters." It is, therefore, unsuitable to presume that the Supreme Court entertained a petition for a writ in Hale v. Allison, and entered judgment therein against the receiver, but refused the writ in the present case, and yet had any impression that the two involved the same question, and thus practically induced the very "diversity of judgments" which it says it was the purpose of the statute to avert.

On the whole, for us to assume to reconsider questions which the Supreme Court has had an opportunity to reconsider in the identical case and on the identical record, and refused to reconsider, would ordinarily involve grave impropriety. Aside from that, we can perceive in this particular instance nothing which calls on us to do so.

The petition of the plaintiff in error, filed on February 4, 1903, is dismissed.