## CONVERSE v. MEARS.

(Circuit Court, W. D. Wisconsin. July 16, 1908.)

No. 2.

1. CORPORATIONS—INSOLVENCY—RECEIVERS—STOCKHOLDERS' STATUTORY LIABILITY—SUITS IN FOREIGN JURISDICTION.

    A chancery receiver of a domestic corporation on whom, as a quasi assignee for the benefit of creditors, is conferred authority to maintain an action to enforce a statutory liability of stockholders by Gen. Laws Minn. 1899, p. 315, c. 272, is entitled to sue in a foreign jurisdiction in a court having jurisdiction of the parties and subject-matter.

2. COURTS—RULES OF DECISION—FEDERAL COURTS—COMITY.

The nature of the liability imposed on stockholders of a corporation by the Constitution of Minnesota, declaring that each stockholder shall be liable to the amount of stock held or owned by him, as to whether such liability is wholly statutory or partially contractual, and therefore transitory, is a matter of general law as to which the federal courts sitting in Wisconsin are not bound to follow the decisions of the Wisconsin Supreme Court either as a matter of comity, or under Rev. St. § 721 (U. S. Comp. St. 1901, p. 581), providing that the laws of the several states are to be regarded as rules of decision in trials at common law so far as applicable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 979. .

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan. 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

3. SAME.

Under Rev. St. § 721 (U. S. Comp. St. 1901, p. 581), providing that the laws of the several states are to be regarded as rules of decision in trials at common law so far as applicable, the federal courts will be governed by the laws of the state with reference to the construction placed on the constitutional or statutory provisions of the state by the highest state court, by decisions of the highest court of the state which have become rules of property, and by rules of law of local character involving domestic customs or usage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 956, 957.]

At Law.

This is an action brought by the plaintiff, as receiver of a defunct Minnesota corporation, to recover from the defendant, a resident of Wisconsin, the amount of a certain assessment made by a court of equity in Minnesota upon shares of stock owned by the defendant in said corporation.

There has been a long and spirited contest in the courts, both state and national, to settle the correct principles and procedure for the enforcement of the liability of stockholders of insolvent corporations, imposed by the Constitution and statutes of Minnesota and other states. In 1899 (Laws 1899, p. 315, c. 272), the Legislature of Minnesota passed a statute to overcome the difficulty met by a receiver in such cases in the courts of other states, and to confer upon him the authority of a quasi assignee. This statute was in force when the present cause of action accrued.

The complaint sets out in detail the proceedings which were taken in the state court pursuant to the Constitution and statutes of Minnesota to enforce the superadded liability thereby imposed upon stockholders. A complete statement of the facts and details so alleged in the complaint will be found set out in extenso in the case of Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163, to which reference is hereby made, because, mutatis mutandis, the allegations and facts are identical with the instant case, and we may thus avoid the lengthy recitations.

The defendant interposed a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action, that the court has no jurisdiction of the subject-matter, and that the plaintiff has not legal capacity to sue.

Jones & Schubring (C. A. Severance, of counsel), for plaintiff.
Sanborn & Blake, for defendant.

QUARLES, District Judge. Every general proposition of law raised by this demurrer has been finally and conclusively settled by the Supreme Court in Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163, in favor of the plaintiff's contention. But

it is insisted that this court, sitting within the territorial limits of Wisconsin, should follow the adverse ruling of the Supreme Court of Wisconsin, as laid down in Finney v. Guy, 106 Wis. 256, 82 N. W. 595, 49 L. R. A. 486, Eau Claire National Bank v. Benson, 106 Wis. 624, 82 N. W. 604, Hunt v. Whewell, 122 Wis. 33, 99 N. W. 599, on grounds of comity.

To prevent confusion it must, at the outset, be borne in mind that in Finney v. Guy, supra, Eau Claire Bank v. Benson, supra, Hale v. Hardon, 95 Fed. 747, 37 C. C. A. 240, Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, and Finney v. Guy, 189 U. S. 335, 23 Sup. Ct. 558, 47 L. Ed. 839, receivers were appointed under chapter 76 of the General Statutes of Minnesota for 1894, whereby the plaintiff became merely a chancery receiver, without title to the cause of action. In the instant case the receiver was appointed pursuant to chapter 272, p. 315, of the General Laws of Minnesota for 1899, whereby the receiver is invested with title to the cause of action against delinquent stockholders, and stands in the position of quasi assignee, and is held to be the representative of all creditors and stockholders of said corporation.

The case of Hunt v. Whewell, supra, originated under the latter statute; but the Supreme Court of Wisconsin adheres substantially to its former ruling, insisting that the suit brought in Wisconsin to enforce the liability of the stockholder is not strictly ancillary to the original suit in Minnesota, and that the Supreme Court of the United States had no occasion to pass upon, and did not pass upon, the doctrine of comity as applied by the Wisconsin court. The order of assessment made by the district court of Washington county, Minn., in this case, was ratified and affirmed by the Supreme Court of Minnesota on appeal. The Minnesota statute has been considered and construed by the Supreme Court of Minnesota in Hanson v. Davison, 73 Minn. 454, 76 N. W. 254. It is true that the opinion goes beyond the requirements of the case, but is at least suggestive of the opinion of the judges of that court as to the scope and functions of the receiver and the true construction of the statute.

With these preliminary suggestions in mind, let us analyze these conflicting rulings of the state and federal courts, in order to ascertain the very point upon which the conflict arises.

The basic principle upon which the opinion in Hunt v. Whewell rests is, to use the language of the court:

"The liability is statutory, the remedy to enforce it is statutory, and the appellant's title is a creature of the statute."

The doctrine is more fully stated in Finney v. Guy, 106 Wis. 256, 265, 82 N. W. 595, 598, 49 L. R. A. 486:

"(1) The statutory right, coupled with the statutory remedy for its enforcement, clearly intended to be pursued at the home of the corporation, is not transitory. (2) The action in a Minnesota court is a bar to any other action to enforce the liability of stockholders."

In Hunt v. Whewell, 122 Wis. 38, 99 N. W. 599, the court, in distinguishing that case from Parker v. Stoughton M. Co., 91 Wis. 174,

64 N. W. 751, 51 Am. St. Rep. 881, points out that in the latter case the suit was brought upon an assessment note belonging to the receiver as the representative of the corporation. It was a corporate asset that the liability did not depend upon any statute and was strictly transitory. Moved by these considerations, the Supreme Court of Wisconsin has held that it was not bound by the just requirements of comity to recognize or enforce such statutory remedy.

We now turn to the federal decisions on this vital proposition:

In Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263, 27 L. Ed. 966, the court say:

"We think the liability imposed by section 10 is a liability arising upon contract. The stockholders of the company are by that section made severally and individually liable, within certain limits, to the creditors of the company for its debts and contracts. Every one who becomes a member of the company by subscribing to its stock assumes this liability, which continues until the capital stock is all paid up and a certificate of that fact is made, published, and recorded."

In Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864, the question was presented whether the individual liability of a stockholder in a national bank survived as against his administrator, and on page 55 of 121 U. S., on page 801 of 7 Sup. Ct. (30 L. Ed. 864), the court say:

"Under that act the individual liability of the stockholders is an essential element in the contract by which the stockholders become members of the corporation. It is voluntarily entered into by subscribing for and accepting shares of stock. Its obligation becomes part of every contract, debt, and engagement of the bank itself, as much as if they were made directly by the stockholder instead of by the corporation. There is nothing in the statute to indicate that the obligation arising upon these undertakings and promises should not have the same force and effect, and be as binding in all respects, as any other contracts of the individual stockholder."

Concord Bank v. Hawkins, 174 U. S. 364, 19 Sup. Ct. 739, 43 L. Ed. 1007:

"In the present case it is sought to escape the force of these decisions by the contention that the liability of the stockholder of a national bank to respond to an assessment in case of insolvency is not contractual, but statutory. Undoubtedly, the obligation is declared by the statute to attach to the ownership of the stock, and in that sense may be said to be statutory. But as the ownership of the stock, in most cases, arises from the voluntary act of the stockholder, he must be regarded as having agreed or contracted to be subject to the obligation."

The right of the plaintiff to sue upon this liability in any court having jurisdiction of the subject-matter and the parties is therefore clear. Dennick v. Railroad, 103 U. S. 11, 26 L. Ed. 439.

In Whitman v. Oxford Nat. Bank, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587, these cases are elaborately reviewed, and on page 563 of 176 U. S., on page 478 of 20 Sup. Ct. (44 L. Ed. 587), Mr. Justice Brewer sums up the discussion as follows:

"The liability which by the Constitution and statutes is thus declared to rest upon the stockholders, though statutory in its origin, is contractual in its nature."

In Bernheimer v. Converse, supra, we find the latest expression of the Supreme Court on the subject:

"It may be regarded as settled that upon acquiring stock the stockholder incurred an obligation arising from the constitutional provision, contractual in its nature, and as such capable of being enforced in the courts, not only of that state, but of another state, and of the United States, although the obligation is not entirely contractual, and springs primarily from the law creating the obligation."

Can there be any doubt that this unfortunate conflict centers about a single proposition involving the nature of the cause of action, whether as here presented it is contractual in nature and therefore transitory? The two tribunals are in harmony as to the legal results that flow from either position. If the cause of action be contractual, and therefore transitory, no court has more thoroughly recognized its obligation to entertain such a case than has the Supreme Court of Wisconsin in Parker v. Stoughton M. Co., 91 Wis. 174, 64 N. W. 751, 51 Am. St. Rep. 881. On the other hand, the legal conclusions of the Supreme Court of Wisconsin, that a statutory remedy afforded for the enforcement of a statutory right is exclusive, is concurred in by the Supreme Court. Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376; Bank v. Francklyn, 120 U. S. 747, 7 Sup. Ct. 757, 30 L. Ed. 825. It therefore conclusively appears that the crux of this controversy involves the nature of the cause of action, and is therefore a question of general law.

The contention of the defendant is that, inasmuch as the Supreme Court of Wisconsin has been pleased to denominate this doctrine as a part of the public policy of the state, it is entitled to such respect and deference from this court as has been frequently accorded to the domestic policy or peculiar usage or local law recognized by a sovereign state as part of its public policy. It is a postulate resulting from our dual system of government that comity between the states becomes a duty of the highest consequence, and that within certain limits the federal court may deflect from the strict line of federal precedent to give effect to such domestic policy, to avoid unseemly conflict of law within the state. In recognition of this principle, Congress enacted section 721, Rev. St. (U. S. Comp. St. 1901, p. 581), providing that the laws of the several states are to be regarded as rules of decision in trials at common law so far as applicable, etc. The courts have construed this statute to cover the following subjects, among others: First. A construction put upon a constitutional or statutory provision of a state by the highest court of the state becomes a part of the statute. Leffingwell v. Warren, 2 Black. 599, 17 L. Ed. 261. Second. Decisions of the highest court of the state which have become rules of property. Third. Rules of law of local character involving domestic customs or usage. Bucher v. Cheshire R. R., 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795; Gardner v. Railway, 150 U. S. 357, 14 Sup. Ct. 140, 37 L. Ed. 1107.

In Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 21, 27 L. Ed. 359, the court say:

"So when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there

has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean toward an agreement of views with the state courts if the question seems to them balanced with doubt."

In Gilbert v. Am. Surety Co., 121 Fed. 499, 502, 57 C. C. A. 619, 61 L. R. A. 253, Seventh Circuit, Jenkins, J., declined to follow the decision of the Supreme Court of Illinois, because the question upon which it passed was one of general law, and was not founded upon the construction of the statute of the state, following and citing from Delmas v. Insurance Co., 14 Wall. 661, 668, 20 L. Ed. 757.

The contention of the defendant seems to be fully met in Boyce v. Tabb, 18 Wall. 546, 21 L. Ed. 757. The suit was brought upon a note which had been given as the purchase price of certain slaves. After the thirteenth constitutional amendment had been adopted, the Supreme Court of Louisiana held that such a sale would not furnish a valid consideration for a contract, and it was claimed that the decision of the state court was binding upon the federal court. The Supreme Court say:

"It is urged, on the part of the plaintiff in error, as the highest court of Louisiana has, on the grounds of public policy, refused to enforce contracts like this since the abolition of slavery, that Judiciary Act Sept. 24, 1789, c. 20, § 34, 1 Stat. 92 (U. S. Comp. St. 1901, p. 581), obliges this court to follow that rule of decision. This is an erroneous view of the obligation imposed by that section on this court, as our decisions abundantly show. The provisions of that section do not apply, nor was it intended that they should apply, to questions of a general nature not based on a local statute or usage, nor on any rule of law affecting titles to land, nor upon any principle which has become a settled rule of property. The decisions of the state courts on all questions not thus affected are not conclusive authority, although they are entitled to and will receive from us attention and respect."

See, also, Stowe v. Belfast Saving Bank (C. C.) 92 Fed. 90, 100.

From Booth v. Clark, 17 How. 322, 15 L. Ed. 164, to Hale v. Allinson, supra, the principles of comity have been often discussed as applied to the right of a chancery receiver to recognition in the courts of states other than those where appointed. The conclusions of the court have not always been harmonious. It would be unprofitable to refer to them in detail, because, as we shall see, this case must be ruled by statutory provisions not before the court when Finney v. Guy was considered by the Supreme Court of the United States.

It requires only reference to sections 4 and 6 of chapter 272, p. 317, Gen. Laws Minn. 1899, and section 3197, Rev. Laws Minn. 1905, all of which are fully set out in the complaint, to understand what plenary powers this receiver has, and how completely the statute has authorized him to bring suit against stockholders in any court, state or federal, wherever they may be found, and how completely he represents the insolvent corporation for all purposes. So that, in the instant case, the receiver comes clothed with title to the cause of action. He comes in his own right like any other litigant, not as a suppliant invoking the doctrine of comity. This distinction is enforced in Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337. By the laws of Missouri:

"Upon the rendition of a final judgment dissolving a company, or declaring it insolvent, all the assets of such company shall vest in fee simple and absolutely in the superintendent of the insurance department of the state," etc.

On page 226 of 103 U. S., 26 L. Ed. 337, the court held:

"By the charter of this corporation, if a dissolution was decreed, its property passed by operation of law to the superintendent of the insurance department of the state, and he was charged with the duty of winding up its affairs. Every policy holder and creditor in Louisiana is charged with notice of this charter right which all interested in the affairs of the corporation can insist shall be regarded. The appellees, when they contracted with the Missouri corporation, impliedly agreed that, if the corporation was dissolved under the Missouri laws, the superintendent of the insurance department of the state should represent the company in all suits instituted by them in winding up its affairs. Relfe therefore became by operation of law the successor of the corporation in the litigation," etc.

In Burget v. Robinson, 123 Fed. 262, 268, 59 C. C. A. 260, referring to the suggestion of the Supreme Court in Hale v. Allinson, that the former statute of Minnesota did not confer upon the receiver the right to proceed to enforce the liability of stockholders, it is suggested that the latter statute of 1899 is susceptible of a different construction and may well bring the case within the doctrine of Relfe v. Rundle, supra.

In Parsons v. Charter Oak Life Ins. Co. (C. C.) 31 Fed. 305, Judge Shiras, in a case of conflicting claims between two receivers as to property situated in Iowa, where a defunct insurance company of Connecticut was being wound up in that state under a statute providing for the appointment of a receiver to take possession of all assets and property of the corporation, with power to sell and convey the same, and direct the application of the avails of such assets and property equitably, etc., held that the case was brought within the rule of Relfe v. Rundle, supra, and that every policy holder and creditor resident in Iowa is charged with notice of such statute and of the powers of the receiver thereunder, and impliedly agree that, in case of insolvency and dissolution under the laws of Connecticut, they would be bound by such laws, and that the rules of comity had no application to the case.

Kirtley v. Holmes, 107 Fed. 1, 46 C. C. A. 102, 52 L. R. A. 738, is a most instructive case, covering all substantial features of the present controversy. The case arose under constitutional provisions in Ohio quite similar to those in Minnesota. But the Ohio statute did not invest the receiver with the title to the cause of action, as is the case here. He was a mere chancery receiver. Judge Day, speaking for the Court of Appeals for the Sixth Circuit, says on page 7 of 107 Fed., on page 109 of 46 C. C. A. (52 L. R. A. 738):

"Can the contractual liability of a stockholder of an Ohio corporation, domiciled in a foreign jurisdiction, be enforced, when the proofs show an assessment in the state of the creation of the corporation upon domestic stockholders to the full amount of the stockholders' liability? * * * We think, in the light of principle and authority, this question must be answered in the affirmative. We find the obligation to be one arising upon contract, and its enforcement upon principles of comity, at least, in cases like the one under consideration, to work no injustice upon citizens of a foreign jurisdiction. Can the receiver bring the action? We think the order is broad enough, assuming

the court had power to make it, to justify the prosecution of suits in another jurisdiction. This seems to have been one of the purposes for which the receiver was appointed, and it would be a very narrow construction to hold that he was appointed only to collect the judgments rendered in the Ohio court. * * * Such being the nature of the liability, it is well settled that such obligation will be enforced wherever practicable in a federal court of competent jurisdiction." Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439; Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123; Whitman v. Bank, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587.

In Rhodes v. U., S. Bank, 66 Fed. 512, 13 C. C. A. 612, 34 L. R. A. 742, the Circuit Court of Appeals for the Seventh Circuit entertained a suit brought by a creditor against a stockholder of an insolvent Kansas corporation to enforce a statutory liability, on the authority of Flash v. Conn., supra, giving effect to the ruling of the Kansas court as to the power of the receiver.

In Hale v. Hardon, 95 Fed. 747, 37 C. C. A. 240, the Circuit Court of Appeals for the First Circuit held, under the Minnesota law of 1894 (Gen. St. 1894, c. 76), that the doctrine of Relfe v. Rundle, supra, applied, and that it was a part of the implied contract with every stockholder that in case of insolvency the corporation might be wound up according to the Minnesota law, and that the statutory receiver might sue extraterritorially.

The public policy of Minnesota and Wisconsin, as declared by their statutes concerning the method of winding up the affairs of insolvent corporations and gathering in the necessary contributions of stockholders into a common fund to meet the liabilities of the corporation, seems to be harmonious. Under neither system is a creditor permitted to pursue stockholders in an individual suit, but, wherever there is superadded liability, all creditors must be arrayed in a single suit against all stockholders who are amenable to process. The object is to avoid confusion and injustice by working out the rights, liabilities, and equities of all in a single proceeding, so that the burden may be justly ascertained and equitably distributed.

It is matter of common knowledge that in securing stock subscription little attention is paid in this commercial age to state lines. The stockholders of a Wisconsin corporation may be largely resident in Illinois or other adjoining states. If in case of insolvency there be no way to reach nonresident stockholders, there would seem to be a serious impediment in effectuating this public policy. Unless the Wisconsin receiver can resort to some proceeding that is in nature ancillary to the main suit in Wisconsin, then complete immunity will be enjoyed by all nonresident stockholders who may in many instances hold a large fraction of the stock, and this circumstance would defeat the very policy that this statute contemplates.

As Field, C. J., in Bank v. Ellis, 172 Mass. 39, 51 N. E. 207, 42 L. R. A. 396, 70 Am. St. Rep. 232, well says:

"It certainly concerns the due administration of justice that all stockholders, wherever they reside, should be compelled by proceedings somewhere to perform the statutory obligation towards creditors of the corporation which they have assumed by becoming stockholders."

But it is not for us to dictate how the domestic policy of Wisconsin shall be framed, or to what extent the Supreme Court of Wisconsin

shall yield to the dictates of comity in dealing with cases arising under the statutes of a sister state. We are only concerned with the question whether a just regard for the principles of comity will constrain us to depart from the ruling of the federal Supreme Court. We do not fail to appreciate the desirability of harmonious ruling by both tribunals sitting within the state; but it appears that the conflict of opinion does not fall within the lines where the duty to follow the state court has been recognized. We have seen that the question upon which the courts have differed involves the nature of the obligation assumed by the corporate stockholders under the Constitution and laws of Minnesota. This question lies beyond the realm of comity, and must be settled by each court as it arises, by the application of general principles of law.

No case has been cited, and I believe none can be found, where a federal court has surrendered the right of independent judgment when the question involved was one of general law. Therefore we conceive it to be our plain duty to adhere to the rule laid down in Bernheimer v. Converse, supra.

From which it follows that the demurrer must be overruled, and it is so ordered.