Mr. Justice OLIEEORD
 

 delivered the opinion of the court.
 

 
 *510
 
 Subject-matter of the controversy in this case was a collision between tlie schooner White Cloud and the bark Newsboy, which occurred on the twelfth day of November, 1862, off Twin River Point, or a little below, on the west shore of Lake Michigan. Owner of the "White Cloud filed his libel against the bark Newsboy on the twenty-fifth day of May, 1863, and the owners of the bark filed their cross-libel against the schooner on the twenty-ninth day of September in the same year. Both cases were heard together in the District Court, and the decision was that the bark was in fault. Damages were accordingly awarded to the libellant in the case of the schooner in the sum of five thousand six hundred and seventy-three dollars and sixty-six cents, and the cross-libel was dismissed with costs. Circuit Court on appeal affirmed the respective decrees and the owners of the bark, as respondents in one case and as libellants in the other, appealed to this court.
 

 1. Voyage of the schooner was from Buffalo to Chicago, and that of the bark was from Milwaukie to Buffalo. Capacity of the former was three hundred and eighteen tons, and that of the latter was five hundred and fifty-seven tons, and both were good vessels and had a full complement of officers and seamen. Testimony shows that both vessels were under full headway when the collision occurred, and that it resulted in great damage to the schooner. Among other injuries it broke the rail, stanchions, and bulwarks of the schooner from the fore-rigging to the main-rigging, and cut her outside planks dovrn below the water-line as far as the bilge, and broke the clamps and ceiling down to the bilge-kelson. Damage was also done to the plank-sheer and deck-frame, and the capstan and some of the deck-plank were broken, the forestay-sail split and the butts of the deck-plank were started the whole length of the vessel.
 

 Principal damage was on the starboard side of the schooner, showing conclusively that the blow was between the main and fore-rigging, on that side. She was in ballast, but the bark had a full cargo of wheat. Collision occurred about seven o’clock in the evening, but the proofs
 
 *511
 
 show that it was not very dark, and the witnesses concur that there was no haze on the water and that the lights of vessels could he seen for several miles. Although it was cloudy, still the weather was pleasant and there was a good breeze. Speed of schooner was six or seven miles an hour, and that of the bark was nine miles. Weight of the evidence shows that the wind, though slightly baffling, varying occasionally perhaps a degree to the west, was southwest-by-west, and both vessels were under a full, or nearly full, press of canvas. Course of the schooner was south-half-east, and that of the hark was north-northeast, but she was not kept steady.
 

 Considerable conflict exists in the testimony as to the course of the wind and of the schooner, but the better opinion, in view of the whole case, is, that the testimony of the master is correct. He came on deck twenty minutes before the collision, and he testified that the’wind was about southwest-by-west, a little baffling, varying sometimes a point to the westward, and that the vessel was heading by the compass south-half-east, and we adopt those statements as satisfactorily sustained by the weight of the evidence.
 

 Both vessels showed lights, and the proofs are full to the point that each saw the light of the other two or three miles before they came together. Obviously, therefore, it is a case of fault and not of inevitable accident — as the water was smooth and the vessels were sailing in a broad unobstructed thoroughfare. Undisputed fact also is that the schooner'was sailing on the starboard tack, closehauled on the wind, and that the bark was on the larboard tack and had the wind free. Buie of navigation is, that where a vessel has the wind free, or is sailing before or with the wind, she must keep out of the way of the vessel which is closehauled by the wind or sailing by or against it, and the vessel on the starboard tack has a right to keep her course and the one on the larboard tack must give way or be answerable for the consequences.
 
 *
 

 
 *512
 
 Strong effort is made by the respondents to take the case. out of the operation of that rule by attempting to show that the schooner changed her course. Persons engaged in navigating vessels upon navigable waters are bound to observe the nautical rules recognized by law in the management of their vessels on approaching a point where there is danger of collision. Undoubtedly the same law which requires vessels having the wind free, or sailing on the larboard tack, to keep out of the way or give way, as the case may be, also imposes the correlative duty upon those closehauled on the wind, or sailing on the starboard tack, to keep their course, in order that the former may know the position of the object to be avoided, and not be baffled or led into error in their endeavors to comply with the requirement.
 
 *
 

 Appellants show, beyond doubt, that the schooner changed her course, but they do not show that she changed it at a time or in any sense when or in which the law regards it as a fault. The rules of navigation mentioned do not apply to a vessel required to keep her course after the approach of the advancing vessel is so near that the collision is inevitable. An error committed by those in charge of a vessel under such circumstances, if the vessel is otherwise without fault, will not impair her right to recover for the injuries occasioned by the collision, for the reason that those who put the vessel in that peril are chargeable with the error, and must answer for the consequences which it occasions.
 

 Evidence shows satisfactorily that the schooner kept her course until
 
 the 'peril was impending and the collision inevitable,
 
 and that the order, liard-a-starboard, was given by the master at the moment it occurred, “ to ease off the blow and make it glancing.” Such a change of course, at that moment, the District Court held was demanded as a means of self-preservation and was not a fault, and we entirely concur in that conclusion.
 

 Objection is also taken to the decision of the court in confirming the report of the commissioner as to the amount of
 
 *513
 
 the damages, but the objection is without merit and is hereby overruled. Decision of the District Court in the case of the cross-libel was also correct.
 

 Decree of the Circuit Court
 

 Aeeiemed with costs in both cases.
 

 *
 

 St. John
 
 v.
 
 Paine, 10 Howard, 581; The Gazelle, 2 W. Robinson, 517; Woodrop Sims, 2 Dodson, 85; Ann Caroline, 2 Wallace, 544.
 

 *
 

 Steamship Co.
 
 v.
 
 Rumball, 21 Howard, 384.