## OMAHA ELECTRIC LIGHT & POWER CO. v. CITY OF OMAHA et al.

(Circuit Court of Appeals, Eighth Circuit. May Term, 1914.)

### No. 3141.

1. COURTS (§ 356*)—CIRCUIT COURTS OF APPEALS—PROCEDURE—BILL OF REVIEW.

    The practice of the English Chancery Court and of the federal trial courts in equity in entertaining bills of review is not properly applicable to courts of appeal.

    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 937; Dec. Dig. § 356.*]

2. COURTS (§ 405*)—CIRCUIT COURTS OF APPEALS—JURISDICTION—EFFECT OF ORDER STAYING MANDATE.

    By an order staying its mandate pending an appeal to the Supreme Court from its decision, a Circuit Court of Appeals retains its jurisdiction, so that a dismissal of the appeal leaves the cause still pending in that court, which may revise or change its decree, although the term at which it was entered has passed.

    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*

    Jurisdiction of Circuit Court of Appeals in general, see notes to Lau Ow Bew v. United States, 1 C. C. A. 6; United States Freehold Land & Emigration Co. v. Gallegos, 32 C. C. A. 475.]

3. COURTS (§ 405*)—CIRCUIT COURTS OF APPEALS—REVISAL OF DECREE AFTER TERM.

    A Circuit Court of Appeals entered a decree on appeal, affirming a decree of a District Court dismissing a bill to enjoin enforcement of a city ordinance, but on the taking of an appeal to the Supreme Court entered an order staying its mandate. The appeal was dismissed by the Supreme Court for want of jurisdiction, but in the meantime another suit had been brought in the same District Court by a different plaintiff to enjoin enforcement of the same ordinance, and a similar decree had been reversed on direct appeal by the Supreme Court, which held the ordinance void and by its mandate directed a decree granting the injunction. *Held*, that a bill filed by leave in the Circuit Court of Appeals by the plaintiff in the suit there pending, designated as a "bill in the nature of a bill of review," would be treated as a petition for rehearing, and that under the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

circumstances the court would set aside its former decree, although the term at which it was entered had passed, and enter one in conformity with that of the Supreme Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*]

**4. COURTS (§ 85*)—RULES OF COURT—POWER TO DISREGARD.**

A court may in an exceptional case set aside one of its rules as applicable to such case.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 294, 296–301; Dec. Dig. § 85.*]

Appeal from the Circuit Court of the United States for the District of Nebraska; W. H. Munger, Judge.

Suit in equity by the Omaha Electric Light & Power Company against the City of Omaha and Waldemar Michaelson. On bill in the nature of bill of review, treated as a petition for rehearing. Former decree (179 Fed. 455, 102 C. C. A. 601) set aside, and new decree entered.

See, also, 230 U. S. 123, 33 Sup. Ct. 974, 57 L. Ed. 1419.

William D. McHugh, of Omaha, Neb., for appellant.

W. C. Lambert and Benjamin S. Baker, both of Omaha, Neb. (John A. Rine and L. J. Te Poel, both of Omaha, Neb., of counsel), for appellees.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. In 1884 the city of Omaha, by ordinance, granted to plaintiff a franchise empowering it to use the streets and alleys of the city for the purpose of transacting "a general electric light business." Thereafter in the progress of the art of electricity the company used its system for distributing electricity not only for lighting purposes, but also for heat and power. On the 26th of May, 1908, the city council, by resolution, directed its electrician to disconnect all wires of the plaintiff used in transmitting current for heat and power. Thereafter the plaintiff filed its bill in the United States Circuit Court for the District of Nebraska, setting up its franchise and claiming the right under it to use its system for all the purposes aforesaid, and asking a temporary injunction to restrain the enforcement of the resolution. Issue was joined, evidence taken, and a final decree entered on the 22d day of July, 1909, dismissing the bill for want of equity upon the ground that plaintiff had no right under its franchise to distribute electricity for power and heat. 172 Fed. 494. An appeal was sued out to this court, and on the 20th of April, 1910, an opinion was filed here holding that plaintiff's franchise had expired by limitation of time, and that it, therefore, had no franchise to use the streets and alleys for distributing electricity for any purpose whatsoever. 179 Fed. 455, 102 C. C. A. 601. Pursuant to this opinion a decree was entered affirming the decree of the trial court. Plaintiff sued out an appeal to the Supreme Court of the United States to review this decision, and a supersedeas was thereupon granted and an order entered staying the mandate of this court.

Soon after our decision the Old Colony Trust Company, the trustee in a mortgage upon all of the Electric Light Company's property and franchises, filed a bill in equity against the same defendants in the District Court of the United States for the District of Nebraska, in which it alleged that the franchise rights of the plaintiff under the ordinance of 1884, and the practical construction placed thereon by the parties through a long course of dealing, included the right to distribute electric current for the purpose of power and heat as well as light. It specifically claimed the protection of the fourteenth amendment and the contract clause of the federal Constitution, and prayed an injunction to restrain the enforcement of the resolution above referred to as an impairment of the rights thus asserted. The city of Omaha filed its answer, denying the existence of the franchise for any purpose. The cause was submitted upon the pleadings and evidence, and a decree was entered following the decision of this court in the Electric Light Company Case, dismissing the bill for want of equity on the ground that all rights under said ordinance had expired prior to the bringing of the action. The Old Colony Trust Company appealed from this decree direct to the Supreme Court of the United States. Both appeals were heard together and opinions handed down June 16, 1913. The appeal from our decision in the Electric Light Company Case was dismissed for want of jurisdiction, because the complaint failed to raise clearly any federal question. 230 U. S. 123, 33 Sup. Ct. 974, 57 L. Ed. 1419. In the Old Colony Trust Co. Case the court held that the ordinance granted a perpetual franchise, which included the right to distribute electricity for power and heat as well as light. 230 U. S. 100, 33 Sup. Ct. 967, 57 L. Ed. 1410. A decree was entered in accordance with this opinion, reversing the decree of the District Court of Nebraska and remanding the cause to that court with directions to restrain the enforcement of the resolution.

The dismissal of the appeal from our decision leaves our decree standing, though it is in direct conflict with the decision of the Supreme Court.

Plaintiff, at the December, 1913, term of this court at St. Louis, while the stay of our mandate was still in force, presented its bill, designated "a bill in the nature of a bill of review," giving the foregoing history of the litigation, and praying for a revision of our decree, and, upon notice to defendants, moved for permission to file the same. Defendants appeared and filed written objections. The matter was fully argued, and an order entered allowing the motion and ruling the defendants to answer the bill. An answer has been filed which admits all material facts and raises only questions of law, and the case is now before us for disposition on the merits.

For the purposes of this application there is no material difference in the issue in the Electric Light Company Case, and the Old Colony Trust Company Case. The wrong in each was the threatened enforcement of the resolution. The right of the plaintiff in each was created by the ordinance granting the franchise. The resolution and ordinance were set out in full in both complaints. The controversy turned upon whether the Electric Light Company had a subsisting right under the ordinance which the enforcement of the resolution would impair. In the

Old Colony Trust Company Case the facts showing the practical construction which the parties themselves had put upon the ordinance were set forth with greater fullness than in the other case. This, however, was used by the Supreme Court, not for the purpose of creating an estoppel, but for the purpose of applying a familiar canon of construction with a view to ascertaining the true meaning of the ordinance. It is that meaning, however ascertained, which defines the right of the plaintiff in each case. The Old Colony Trust Company had no right except that which it derived from the Electric Company. The ordinance measures both. The plaintiffs are different in name, but identical in right.

In the Electric Light Company Case the trial court held that the ordinance did not grant the right to distribute current for heat and power, and dismissed the bill, thus leaving the city free to execute its resolution to cut all wires used for those purposes. We held that all rights granted by the ordinance had expired by limitation, and affirmed the decree of the trial court. The Supreme Court held in the Old Colony Trust Co. Case, that the franchise granted by the ordinance was perpetual; that it embraced the right to distribute current for heat and power, as well as light, and directed the trial court to issue an injunction to restrain the enforcement of the resolution. If we send down a mandate pursuant to our decree, we shall declare, in square conflict with the mandate of the Supreme Court, that the company has no franchise to distribute current for heat and power, and that the city has the right to cut all wires used for those purposes.

If we have the power to revise our decree and issue a mandate in harmony with that of the Supreme Court, it is plainly our duty to do so. This we should do not only to protect the rights of the plaintiff as a litigant, but as a matter of public policy to preserve the orderly administration of justice and avoid an unseemly conflict of judicial mandates.

A learned argument has been submitted by counsel dealing with bills of review in courts of chancery in this country and England. Much of this seems to us irrelevant. It has long been settled that the practice on rehearings in the English Courts of Chancery is not applicable to federal appellate courts. In Brown v. Aspden, 14 How. 25, 14 L. Ed. 311, Chief Justice Taney, speaking for the court, said:

"A motion has been made for a rehearing in this case, and we have been referred to the practice of the English Chancery Court in support of the application. The argument presupposes that this court, in cases in equity, has adopted the rules and practice of the English chancery. But this is a mistake. The English chancery is a court of original jurisdiction; and this court is sitting as an appellate tribunal. It would be impossible, from the nature and office of the two tribunals, to adopt the same rules of practice in both. * * * In the House of Lords, in England, to which the appeal lies from the Court of Chancery, a rehearing is altogether unknown. A reargument, indeed, may be ordered, if the house desires it, for its own satisfaction. But the chancery rules in relation to rehearings, in the technical sense of the word, are altogether inapplicable to the proceedings on the appeal.

"Undoubtedly this court may and would call for a reargument, where doubts are entertained which it is supposed may be removed by further discussion at the bar. And this may be done after judgment is entered, provided the order for reargument is entered at the same term. But the rule of the court is

this: That no reargument will be heard in any case after judgment is entered, unless some member of the court who concurred in the judgment afterwards doubts the correctness of his opinion, and desires a further argument on the subject. And when that happens, the court will, of its own accord, apprise the counsel of its wishes, and designate the points on which it desires to hear them.

"There is certainly nothing in the history of the English Court of Chancery to induce this court to adopt rules in relation to rearguments, analogous to the chancery practice upon applications for a rehearing. According to the general practice of that court, one rehearing, where the application has been sanctioned by the signature of two counsel, is a matter of course. And this facility in obtaining one rehearing, has naturally led to others, and in cases of interest or difficulty, two, or even three, rehearings have sometimes been allowed, under the special leave of the court, before the decree was enrolled, and, consequently, before it could be removed to the House of Lords. The natural result of this practice is to produce some degree of carelessness in the first argument, and hesitation and indecision in the court. But the great evil is in the enormous expenses occasioned by these repeated hearings, and the delays which it produces in the decision, which often prove ruinous to both parties before the final decree is pronounced. Nor is the mischief confined to the particular suit in which such proceedings and delays are permitted to take place. A multitude of others are always behind it, waiting anxiously to be heard. And the result of the practice of which we are speaking has been such that, although the court has always been filled by men of the highest order, distinguished for their learning and industry, yet the expenses and delays of the court have become a byword and reproach to the administration of justice, and Parliament has at length been compelled to interpose.

"And if this court should adopt a practice analogous to that of the English chancery, we should soon find ourselves in the same predicament; and we should be hearing over again at a second term almost all the cases which we had heard and adjudged at a former one, and upon which our own opinions would have been definitely made up upon the first argument. We deem it safer to adhere to the rule we have heretofore acted on. And no reargument will be granted in any case, unless a member of the court who concurred in the judgment desires it; and when that is the case, it will be ordered without waiting for the application of counsel."

See, also, Winchester v. Winchester, 121 Mass. 127, opinion by Chief Justice Gray, afterwards Mr. Justice Gray of the Supreme Court of the United States.

[1] If the English chancery practice as to rehearings is inapplicable in federal courts of appeal, much less could their practice as to bills of review be received. Such bills could never be entertained until after the time for filing petitions for rehearing had expired. In England that time was fixed by the enrollment of the decree. In this country, by a legal fiction, it has been held that all decrees shall be deemed to be enrolled on the last day of the term, and this fixes the point after which bills of review may be filed. By repeated decisions of the Supreme Court, however, jurisdiction of causes ends with the adjournment of the term, unless it is retained by some appropriate proceeding, and the same is true of the Circuit Courts of Appeal. In the great majority of cases the mandate has gone down transmitting the case to the trial court. It is quite clear, therefore, that a bill of review, based on the practice of the English chancery courts, and of the federal trial courts in equity, cannot properly apply to courts of appeal. There are many other features which make such bills unfit for appellate courts. When based on errors of law, they may be filed as a matter of right. They may also be filed at any time dur-

ing the period allowed for appeals, and the pendency of an appeal would in most cases toll the running of the statute. Ensminger v. Powers, 108 U. S. 292, 2 Sup. Ct. 643, 27 L. Ed. 732.

Appellate jurisdiction is exercised solely for the purpose of review. In the interest of a prompt administration of justice, causes should be retained by such courts only for a brief period. To provide against possible errors in their decisions a short time is now permitted by their rules for filing petitions for rehearing. It would be intolerable if, after causes have been fully argued and decided, and counsel have had an' opportunity to call attention to any errors of fact or of law in the written opinion of the court, there could then be opened up an indefinite vista for a re-examination and revising of the decree by means of bills of review. When suits reach appellate courts their issues, both of law and fact, are usually well defined. There is ample time for the preparation of written briefs in which the case can be fully presented. There is never any occasion for the haste and lack of opportunity for investigation which sometimes lead trial courts into error. When an appellate court, after such a presentation, has fully considered a case, and reduced its conclusions to a written opinion, and counsel have had an opportunity to point out any mistakes in the opinion, by petition for rehearing, the result must be held to be as free from error as any human action can be. The evils that would accrue from applying to such judgments the doctrines of bills of review in chancery are manifest and intolerable.

In Southard v. Russell, 16 How. 547, 569 (14 L. Ed. 1052), the Supreme Court said:

"The better opinion is that a bill of review will not lie at all for errors of law alleged on the face of the decree after the judgment of the appellate court."

The same view is expressed by Story in his Equity Pleading, § 408. See, also, Nashua & L. R. Co., 169 Mass. 157, 47 N. E. 606, 608; Street's Federal Equity Practice, § 2178.

After the decision on appeal and the remanding of the case to the trial court, a bill of review may be filed on the ground of newly discovered evidence. In order to prevent a conflict of jurisdiction, however, it is necessary in such a case to first obtain the consent of the appellate court whose judgment is to be reviewed. Southard v. Russell, 16 How. 547, 14 L. Ed. 1052; Keith v. Alger, 124 Fed. 32, 59 C. C. A. 552. Such a bill does not seek a revising of the decree, but proceeds to a new decree upon new evidence.

In Kimberly v. Arms (C. C.) 40 Fed. 548, it is said that application was made to the Supreme Court "for leave to file bills of review for alleged errors in the judgments or decrees" in Bently v. Coyne, 4 Wall. 509, 18 L. Ed. 457, and Rubber Co. v. Goodyear, 9 Wall. 805, 19 L. Ed. 828. An examination of these cases leaves no doubt that both bills were based upon newly discovered evidence rather than error apparent. The case of Bently v. Coyne, 4 Wall. 509, 18 L. Ed. 457, is a mistaken citation. The case to which the court intended to refer is the next one in the report, Purcell v. Miner, in which the petition for rehearing is considered at 4 Wall. 519, 18 L. Ed. 459.

Both our power and practice, therefore, on the present application, must be found, not in the practice of trial courts on rehearings or bills of review, but in the rules and decisions of appellate courts defining their practice as to the re-examination of their own decrees. For a new case analogies may be found in the former field, but not rules. Notwithstanding the naming of the application as "a bill in the nature of a bill of review," we must treat it simply as a petition for rehearing.

The term at which our decree was entered has been adjourned, and several other terms have intervened. It is urged that this deprives us of jurisdiction to grant a rehearing. The Supreme Court has frequently stated in unqualified language that it has no power to review its judgments or decrees after adjournment of the term. Brown v. Aspden, 14 How. 25, 14 L. Ed. 311; Brooks v. Railroad Co., 102 U. S. 107, 26 L. Ed. 91; United States v. Knight, 1 Black, 488, 17 L. Ed. 80; Public Schools v. Walker, 9 Wall. 603, 19 L. Ed. 650; Bushnell v. Crooke Mining & Smelting Co., 150 U. S. 82, 14 Sup. Ct. 2, 37 L. Ed. 1007. In 1884 this was embodied in rule 30 of the Court, 108 U. S. 591, 32 Sup. Ct. xii. That court has also stated quite as frequently that it cannot grant a rehearing after its mandate has gone down. Sibbald v. United States, 12 Pet. 488, 9 L. Ed. 1167; Noonan v. Bradley, 12 Wall. 121, 125, 20 L. Ed. 279; Browder v. McArthur, 7 Wheat, 58, 5 L. Ed. 397; Peck v. Sanderson, 18 How. 42, 15 L. Ed. 262; Washington Bridge Co. v. Stewart, 3 How. 413, 11 L. Ed. 658; Kingsbury v. Buckner, 134 U. S. 650, 671, 10 Sup. Ct. 638, 33 L. Ed. 1047; Hudson v. Guestier, 7 Cranch, 1, 3 L. Ed. 249. In all of the foregoing cases both events had occurred at the time the petition for rehearing was presented. The term had adjourned and the mandate had gone down. At that time mandates were never sent down during the term, except on motion and special order. At the adjournment of the term, mandates were issued in all cases decided, unless motion for rehearing had been filed. Blatchford's Rules of United States Courts, 183. The adjournment of the term and the going down of the mandate being contemporary events, the court never had occasion to consider the effect of staying its mandate alone. In 1895 rule 39 was adopted, which reads as follows:

"Mandates shall issue as of course after the expiration of thirty days from the day the judgment or decree is entered, unless the time is enlarged by order of the court, or of a justice thereof, when the court is not in session, but during the term." 159 U. S. 709, 32 Sup. Ct. xiv.

The year following, in Bank of Commerce v. Tennessee, 163 U. S. 416, 16 Sup. Ct. 1113, 41 L. Ed. 211, a mandate was recalled, petition for rehearing granted, and the decree revised. It is manifest, therefore, that at the present time the going down of the mandate does not divest the court of power to grant a rehearing.

Being a court of final resort the Supreme Court has never had occasion to stay its mandate during the pendency of an appeal. Its stays have been confined entirely to petitions for rehearing. Neither its decisions nor its rules can, therefore, control us as an intermediate court in meeting the precise question raised by this application.

[2] That question is: What effect does the order staying our mandate have upon our jurisdiction to entertain a motion for rehearing? The exact question was before the Circuit Court of Appeals of the First Circuit in Burget v. Robinson, 123 Fed. 262, 59 C. C. A. 260, and is answered in an able opinion by Judge Putnam. The jurisdiction is there sustained upon grounds which seem to us sound.

It is a universal rule that the perfecting of an appeal transfers the cause to the appellate court, and that it remains there until it is remitted to the trial court by the sending down of the mandate. Credit Co. v. Ark. Cen. Ry. Co., 128 U. S. 258, 9 Sup. Ct. 107, 32 L. Ed. 448; Lockman v. Lang, 132 Fed. 1, 65 C. C. A. 621; Thomas v. Thomas, 27 Okl. 784, 113 Pac. 1058, 35 L. R. A. (N. S.) 124, 133, Ann. Cas. 1912C, 713; Aspen Smelting Co. v. Billings, 150 U. S. 31, 36, 14 Sup. Ct. 4, 37 L. Ed. 986; Ott v. Boring, 131 Wis. 472, 111 N. W. 833, 11 Ann. Cas. 857; In re Jessup's Estate, 81 Cal. 408, 22 Pac. 1028, 1031, 6 L. R. A. 591. An order staying the mandate is similar in its jurisdictional effect to the order of a trial court permitting the filing of a motion for a new trial. Such an order tolls the running of the statute limiting the time for taking out a writ of error, and retains the court's control of its judgment notwithstanding the adjournment of the term. Kingman v. Western Mfg. Co., 170 U. S. 675, 678, 680, 18 Sup. Ct. 786, 42 L. Ed. 1192; Burget v. Robinson, 123 Fed. 262, 59 C. C. A. 260.

The jurisdiction of an appellate court differs radically from that of a trial court. It exists solely for the purpose of review. As soon as that is finished the suit is remitted to the trial court. Retention of the cause affords the strongest evidence that in the judgment of the court its work is not complete or any action taken final. To be sure, the object we had in mind at the time of staying the mandate was to await the action of the Supreme Court. Our jurisdiction, however, was not confined by such intention. So long as we retained the cause, it was subject to our full appellate power, including the correction of our decree.

[3] The cause is, therefore, still pending in this court. What we will do with the present application is not a matter of jurisdiction, but a matter of sound practice.

We stayed our mandate to await the directions of the Supreme Court in regard to our decree. Because the plaintiff failed to clearly claim the protection of the federal Constitution, that court was without jurisdiction to give its direction in this suit; but in another suit, involving the same ordinance and resolution, brought against the same defendants by a plaintiff which derives all its rights from the plaintiff in the present suit, that court has spoken its directions. While no mandate can run from its decision to our decree, a mandate of judicial authority does run from it, which we ought not to disregard. We entered our stay for the purpose of determining what mandate should be issued. In the meantime the Supreme Court has issued its mandate to the District Court of Nebraska declaring that the ordinance confers a perpetual franchise upon the plaintiff, and authorizes it to distribute current for heat and power, as well as light, and directs that

court to issue an injunction restraining the city from interfering with those rights. We must now decide what mandate we will issue to the same court. Shall we declare, in direct contravention of the mandate of the Supreme Court, that plaintiff's franchise has terminated, and that it has no right to distribute current for any purpose, and authorize the city authorities to cut its wires and destroy its business? What would be the duty of the trial court, if we were to issue such a mandate? Certainly our duty is plain. We ought to harmonize our decree and mandate with those of the Supreme Court.

Our attention is called to our rule which limits the time to present petitions for rehearing to 60 days from the date of the judgment or decree. In our opinion that rule was not intended to control such a case as the one with which we are now dealing. It was intended to prescribe the practice as to matters which are in existence at the time when a decree is entered. It is entirely plain that if the decision of the Supreme Court had been rendered before our decree, our decree would have been different. Applying the analogies of Lord Bacon's first ordinance in regard to bills of review, that decision constitutes new matter which hath arisen since the decree. In fact, it is precisely the kind of new matter which the chancellor had in mind in framing the second clause of his ordinance. This is plain from his sixth ordinance, which reads as follows:

"No decree shall be made upon pretense of equity against the express provision of an act of Parliament. Nevertheless, if the construction of such act of Parliament hath for a time gone one way in general opinion and reputation, and after, by a later judgment, hath been controlled, then relief may be given upon matter of equity for cases arising before the said judgment, because the subject was in no default."

The "later judgment" here referred to would seem to be at least one form of "new matter" arising after the decree referred to in the first ordinance. See, also, Jopp v. Wood, 2 DeG. J. & S., 323.

[4] Furthermore, the case is so exceptional that we would be justified under the decisions of the Supreme Court in setting aside our rule if it were applicable to the case. Poultney v. City of LaFayette, 12 Pet. 472, 9 L. Ed. 1161; United States v. Breitling, 20 How. 252, 9 L. Ed. 900; Burget v. Robinson, 123 Fed. 262, 59 C. C. A. 260.

It is also urged that a variance in judicial decisions is not a sufficient cause to justify us in disturbing our decree. Tilgham v. Werk (C. C.) 39 Fed. 680, and Hoffman v. Knox, 50 Fed. 484, 1 C. C. A. 535, are said to support this contention. If there was no change in the situation of the parties after the entering of the decree in the first case cited, so as to make a revision of the decree inequitable, we should have thought a bill of review would have properly lain in that case after the decision of the Supreme Court of the United States in Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279. As to the second case cited, there had been such a radical change in the situation of the parties since the rendering of the decree as made the bill of review inequitable. The first decree had been executed by sale of the property involved, and the rights of the third parties had intervened. Furthermore, the plaintiff in that suit asked only a partial revision of

the decree seeking thereby to have all that part of it which would be beneficial to him retained, and to destroy the part under which innocent third parties had acquired rights. Neither of the cases cited presented a situation similar to that with which we are now dealing.

The judgment entered herein, therefore, on the 20th day of April, 1910, is hereby vacated and set aside, and on the authority of the decision of the Supreme Court in the Old Colony Trust Company Case a decree will be entered reversing the decree of the lower court with direction to enter a decree against the enforcement of the resolution of 1908, in accordance with said opinion of the Supreme Court.