CITY OF OMAHA et al. v. OMAHA ELECTRIC LIGHT & POWER CO.

(Circuit Court of Appeals, Eighth Circuit.    February 10, 1919.)

No. 5098.

1. APPEAL AND ERROR ⬤⟹1194(1)—DETERMINATION—THEORY OF DECISION.

A judgment of the United States Supreme Court *held* an adjudication that complainant, which had a franchise for the purpose of transacting general electric light business, was entitled to furnish current for heat and power, and a resolution limiting complainant to the heat and power business already existing cannot stand, on the theory that the decision was based on an estoppel.

2. COURTS ⬤⟹90(4)—PRECEDENCE—STARE DECISIS.

The former decision of the Circuit Court of Appeals, construing a decision of the United States Supreme Court, is conclusive, where the question is a second time raised.

3. EQUITY ⬤⟹295—PRACTICE—SUPPLEMENTAL BILL.

Where a resolution of a city limiting the power of an electric company was in violation of a previous adjudication of the federal Supreme Court, a supplemental bill, setting up the prior adjudication, was proper.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Bill to restrain enforcement of ordinance by the Omaha Electric Light & Power Company against the City of Omaha and others. From a decree for complainant, defendants appeal.    Affirmed.

W. C. Lambert, of Omaha, Neb. (John A. Rine and L. J. Te Poel, both of Omaha, Neb., on the brief), for appellants.

William D. McHugh, of Omaha, Neb., for appellee.

Before HOOK and STONE, Circuit Judges, and WADE, District Judge.

WADE, District Judge.    The question at issue in this case was finally adjudicated by the Supreme Court of the United States in Old Colony Trust Co. v. City of Omaha, 230 U. S. 100, 33 Sup. Ct. 967, 57 L. Ed. 1410, and Omaha Electric Light & Power Co. v. City of Omaha et al., 216 Fed. 848, 133 C. C. A. 52. In the latter case, and in the case at bar, the same plaintiffs appear, and in both cases, and the case at bar, the defendants are the same.    In the Old Colony Case, the plaintiff was trustee under a mortgage.    The issues in both of the foregoing cases were the same; the only questions before the court being whether a certain ordinance granted by the city of Omaha in 1884 to the assignor of the Omaha Electric Light & Power Company, hereafter called "plaintiff," was still in force, and, if so, whether, under the grant of the use of the streets "for the purpose of transacting general electric light business," the equipment could be used for furnishing current for heat and power.

It is needless to recite a history of the litigation.    The points in issue were squarely decided by the Supreme Court of the United States in the Old Colony Case, and this decision was afterwards given effect by this court through its mandate in the Omaha Electric Light & Power Company Case, supra.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
255 F.—51

In 1908 the city of Omaha (hereafter called "defendant") adopted a resolution directing the city electrician to disconnect all wires of the plaintiff "transmitting electricity to private persons or premises to be used for heat or power," and directing the removal of poles and wires from the streets in Omaha—such resolution being based, as disclosed in the litigation, upon the claim of the defendant that the franchise of 1884 had terminated, and also upon the claim that, even if the franchise was still in force the plaintiff was limited to the use of its poles, wires, and equipment for furnishing current for electric light alone, and that it had no authority under such franchise to furnish current for heat or power.

Under decree upon mandate of the Supreme Court of the United States, and of this court, as aforesaid, a permanent injunction issued, restraining the city from proceeding with the enforcement of the resolution.

In 1914 the city adopted another resolution, asserting that the plaintiff had no authority "to construct and maintain new equipment, etc., in the public streets and places of this city for the purpose of furnishing power and heat, and the extension and enlargement of the equipment and apparatus for that purpose." The resolution prohibited officers and employés of the city from issuing permits to the plaintiff company to "use or occupy any of the public streets or places of this city for the purpose of enlarging, extending, or adding to its existing equipment and apparatus in the public streets and places, used and designed to be used by it in supplying and furnishing electric current to be used for power and heat purposes." The resolution further provided:

"(3) That the city electrician be, and he is hereby, directed and required to disconnect and remove, or cause to be removed, from the public streets and places, all poles, wires, apparatus, and other fixtures established, maintained, or used in the public streets and places of this city by said company, contrary to or in violation of the provisions of part one of this resolution."

In this action the plaintiff sought an injunction restraining the execution or enforcement of the resolution aforesaid, which injunction was granted by the District Court, and upon the appeal of the defendant it is now here for review.

[1] 2. There is no claim here that the adjudication that the franchise still continues is open to question; but it is contended that, so far as the right to use poles, wires, and other equipment "for transmitting current for heat and power," the adjudication rests only upon estoppel, and is limited to the equipment and the uses for heat and power existing at the time of the adjudication. With this contention we cannot agree. The language of the Supreme Court will not bear this construction. This language must be considered in connection with the issues then before the court.

The plaintiff in the original bill did not plead estoppel. It pleaded many facts which it claimed constituted recognition and acquiescence, and it alleged large expenditures, based upon such facts; but these facts were pleaded as showing that the parties themselves had mutually "construed the said franchise license, or privilege granted as afore-

said, as a right to occupy the streets and alleys with the proper appliances for the transmission of electric current for sale to consumers, without any restriction whatever upon the plaintiff as to the use to be made of such current by such consumers." These facts were pleaded as an "interpretation continuously given to said franchise."

The bill sought to bring the case within the rule expressed by the Supreme Court:

"Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence."

That the Supreme Court did not consider the question as one of estoppel, is indicated by the statement:

"Although not strictly such, this rule is sometimes treated as a branch of the law of estoppel."

Entering upon this branch of the case, the Supreme Court clearly indicates that the thing decided is what the "franchise" meant—what was included within the language of the ordinance, "the purpose of transacting general electric light business." It is said:

"Concluding, as we do, that the franchise has not expired but is still subsisting, we come to the question whether it [the franchise] is limited to the distribution of electric current for lighting purposes or includes its distribution for power and heat."

After reviewing all the Nebraska cases, the Supreme Court says:

"These decisions of the Supreme Court of the state are conclusive upon the question of the right of the trust company to have the distribution of electric current for power and heat treated as included within the franchise contract of 1884 while it continues in force. In other words, the trust company is entitled to insist upon a recognition and continuation, subject to all the qualifications inhering in the franchise, of all the rights conferred by the franchise ordinance as the same was interpreted in an actual practice by the electric company and the city prior to the resolution of 1908."

This language does not refer to property rights then existing, but explicitly determines what is "within the franchise contract." The language is emphatic that the plaintiff has the right to "insist upon" "all the rights conferred by the franchise ordinance"; not "conferred" by acts or acquiescence of the city with relation to any existing poles, wires, or equipment, but conferred "by the franchise ordinance." The acts and conduct of the city are considered as an aid in determining what the language of the ordinance meant. The court held that the "franchise" should be construed as it had been "interpreted in an actual practice" by the parties.

The only language in the opinion which is at all uncertain or doubtful, is the clause relied upon by counsel:

"But neither the trust company nor the electric company is entitled to make that construction a basis for enlarging or extending those rights."

In view of the previous language in the opinion, which is clear and emphatic, this clause cannot be construed to mean that the electric company should have only the right to continue then existing equip-

ment.  The very nature of the thing in issue negatives any such purpose.

Counsel for defendant insists upon the application of the rule applied by the Supreme Court of Nebraska in State ex rel. Caldwell v. Lincoln Street Railway Co., 80 Neb. 333, 114 N. W. 422, 14 L. R. A. (N. S.) 336; but in that case there was no question before the court as to the construction of the franchise.  The franchise was void.  It was a "blanket" franchise, while under the law it should have specified the particular streets to be occupied by the street railway.  The street railway company, however, insisted that in view of the fact that it had been permitted to occupy certain streets with its street car lines, and in view of other facts, the city should be estopped from questioning the right to occupy such streets, and the court so held. But the difference between a street railway property and the equipment of an electric light and power company, in relation to the question in issue, is obvious.  A street railway, when it completes its line —when it builds its track and equips it with cars—has done everything necessary to render its full service for all time, aside, of course, from improvements or increased equipment upon the line.  But here is a line of poles equipped with wires for carrying current; service cannot yet be rendered; it can only be rendered by having the proper extensions made to the homes or places of business along the street. These extensions, of course, can only be made as demanded by the development of the city and the wants of its inhabitants.  Here is a block which in 1913, when the opinion in the Old Colony Case was written, may have had 2 extensions; in fact, there may have been but 2 houses upon the block at that time; but from time to time residences have been erected, until now there are 12 houses in the block.  It clearly could not have been the purpose of the Supreme Court to suspend further extensions of the wires to these houses as they were built.  Especially is this true, when it is a matter of common knowledge that, in the erection of poles and the equipment with wire cables, the electric company expends its money, not alone to furnish the equipment necessary for the present number of users who may be in a given block or a number of blocks, but that such equipment, in the very nature of things, is built with the power and the permanency to supply all the demands which may be reasonably anticipated in the future; thus large sums of money are expended by such companies—not for the immediate limited use, but for the remote expanded use.

The resolution sought to be enjoined in this case is not limited in its application to the further extension of main wires for heat and power purposes, but it would prohibit the extension of a feed wire to a house in the middle of the block, and would remove the equipment which would enable the occupant to use power for a washing machine, unless the power had been used prior to the date of the resolution. This should not be permitted, even upon the principle of estoppel, if the plant, the machinery, and the street equipment of the company were planned and established with the purpose in view of ultimately supplying this demand, and the execution of the resolution would unjustly deprive the plaintiff of any income upon such expenditure.

A court might, in the exercise of its discretion, justly limit an unauthorized street railway to the streets already occupied; but a court could not justly deprive this plaintiff of the right to use its equipment to the full power and extent for which it was originally devised.

These considerations, with the language of the Supreme Court, leaves no doubt in our minds that the Supreme Court rested its decision solely upon the construction of the franchise, and not upon any principle of estoppel, with relation to then existing tangible property.

[2] 3. And if there were any doubt, in view of the foregoing considerations, this court (216 Fed. 848, 133 C. C. A. 52, supra) has already clearly construed the opinion of the Supreme Court in the Old Colony Case. It is only necessary to quote the following from the opinion:

"In the Old Colony Trust Co. Case the court held that the ordinance granted a perpetual franchise, which included the right to distribute electricity for power and heat as well as light."

"In the Old Colony Trust Co. Case the facts showing the practical construction which the parties themselves had put upon the ordinance were set forth with greater fullness than in the other case. This, however, was used by the Supreme Court, not for the purpose of creating an estoppel, but for the purpose of applying a familiar canon of construction, with a view to ascertaining the true meaning of the ordinance. It is that meaning, however ascertained, which defines the right of the plaintiff in each case. The Old Colony Trust Company had no right, except that which it derived from the electric company. The ordinance measures both."

"The Supreme Court held, in the Old Colony Trust Co. Case, that the franchise granted by the ordinance was perpetual; that it embraced the right to distribute current for heat and power, as well as light; and directed the trial court to issue an injunction to restrain the enforcement of the resolution. If we send down a mandate pursuant to our decree, we shall declare, in square conflict with the mandate of the Supreme Court, that the company has no franchise to distribute current for heat and power, and that the city has the right to cut all wires used for those purposes."

Comment can add nothing to the force of the foregoing language. The ordinance having been construed to be a subsisting ordinance, permitting the use of the streets for light, heat, and power, the execution of the resolution of 1914 should be enjoined.

[3] 4. The foregoing disposes of the contention of defendant that the jurisdiction of the court in this case could not be invoked by supplemental bill. Holding, as we do, that the action directed by the resolution adopted by the city is in conflict with the prior adjudication, the supplemental bill must be regarded as proper practice.

The judgment of the District Court is affirmed.