## CHASE NAT. BANK OF CITY OF NEW YORK v. CITIZENS GAS CO. OF INDIANAPOLIS et al.

### No. 6472.

Circuit Court of Appeals, Seventh Circuit.

April 8, 1938.

Rehearing Denied May 24, 1938.

TREANOR, Circuit Judge, dissenting.

———◇———

Howard F. Burns, of Cleveland, Ohio, and William L. Taylor, of Indianapolis, Ind. (Baker, Hostetler, Sidlo & Patterson, of Cleveland, Ohio, of counsel), for appellant.

William H. Thompson and Albert L. Rabb, both of Indianapolis, Ind. (Floyd J. Mattice, Corp. Counsel, and Michael B. Reddington, City Atty., both of Indianapolis, Ind., of counsel), for appellees.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

Appellant is the trustee under a deed of trust executed by appellee, Indianapolis Gas Company, on October 1, 1902, to secure a total authorized issue of $7,500,000 of its first mortgage bonds due October 1, 1952, of which bonds aggregating $6,881,-000 are outstanding. The deed of trust conveyed to the trustee all the properties of the Indianapolis Gas Company, including:

"* * * all corporate and other franchises, rights, easements, privileges and immunities, contracts and property, of whatever name or description, now belonging to or held, or which may hereafter be acquired or held by said Gas Company, together with the rents, issues, income, tolls and profits arising therefrom; * * *

"To Have and to Hold all and singular the above mentioned and described property, acquired, and to be hereafter acquired, * * * and the tolls, incomes, revenues, rents, issues and profits thereof * * *."

On September 30, 1913, the Indianapolis Gas Company leased its property to appellee Citizens Gas Company of Indianapolis for a term of 99 years, including in the lease all the mortgaged property. The lessee, among other things, agreed to perform all the obligations of the lessor under its mortgage, except its obligation to pay the principal of the bonds, which included, first, the interest on the lessor's bonded indebtedness, and, second, the sum of $120,-000 per year to be distributed by the lessee direct to the lessor's stockholders, as dividends upon their stock and the expenses of maintaining the lessor's corporate organization not to exceed $300 a year. The Indianapolis Gas Company withdrew from active business and the Citizens Gas Company assumed the active management of its business and the mortgaged property. The Citizens Gas Company was a quasi public corporation whose purposes and objects were controlled by a franchise and contract entered into on August 25, 1905, between the city of Indianapolis and three individual citizens who assigned the franchise and contract to the Citizens Company. The franchise and articles of corporation of the latter company provide that all the capital stock of the Citizens Company should be held by trustees with complete and irrevocable power to hold and vote the stock as fully as if they were the owners thereof and to select the members of the board of directors; that upon the performance of certain named conditions, and after the expiration of 25 years, it was provided that the trustees and directors should convey to the city all the property of the Citizens Company, subject to the legal obligations of that company, to be held by the city for the use and benefit of its inhabitants.

In Todd v. Citizens' Gas Company of Indianapolis et al., 7 Cir., 46 F.2d 855, this court held the property of the Citizens Gas to be a public charitable trust and that the property might be conveyed to the city in continuance of the trust, the city being the successor to said Citizens Company as trustee.

For a period of 22 years after the execution of the aforesaid lease, the mortgaged property was operated by the Citizens Gas during which period it paid the interest on the bonds either direct to the trustee or to the bondholders themselves. During the same interval, Citizens Gas made extensive improvements on the mortgaged property and procured the issuance of some $2,000,000 additional bonds under the deed of trust of October 1, 1902, to provide for the payment thereof. On two occasions the validity of the lease was questioned and its binding effect upon the Citizens Company was sustained by the Supreme Court of Indiana. Fishback v. Public Service Commission of Indiana et al., 193 Ind. 282, 138 N.E. 346, 139 N.E. 449; Williams v. Citizens' Gas Company, 206 Ind. 448, 188 N.E. 212.

On September 9, 1935, in pursuance of a prior demand by the city, the Citizens Company conveyed all its property to the city of Indianapolis, as successor trustee, and executed and delivered to the city an instrument of transfer and assignment. This assignment was made subject to all legal obligations of the Citizens Company including its obligations under the lease. The Citizens Company also tendered to the city an assignment of the lease which the city refused to adopt or recognize as binding upon it. The city took actual possession of the property covered by the lease as well as the mortgage and advised the Indianapolis Company that it was ready to negotiate a new lease, and negotiations were instituted which looked toward the modification or the cancellation of the same.

On March 2, 1936, the Indianapolis Company and the city entered into an agreement providing that until the controversy between them as to the binding effect of the lease upon the city had been either adjudicated or settled, the city would pay a sum equal to the interest on the bonds and the dividends on the stock of the Indianapolis Company to the Indiana National Bank of Indianapolis, and that when such controversy was settled or adjudicated, the sum so paid should be disbursed as follows:

"(a) If an agreement of settlement is made, the fund shall be disbursed in accordance with that agreement.

"(b) If it is determined in a litigated case that the lease is binding upon the City or the property acquired by it from the lessee, the entire fund shall be paid to The Indianapolis Gas Company.

"(c) If it is determined in a litigated case that the lease is not binding upon the City or the property acquired by it, reasonable compensation for the use of the mortgaged property (fixed by agreement or by the court) shall be paid to The Indianapolis Gas Company and the balance, if any, to the City."

Appellant, concerning such agreement, alleges: "the purpose and intent of said agreement was to bring about a default in the payment of interest, to depreciate the value of the outstanding bonds, to place the income derived from the operation of the mortgaged property beyond the reach of the bondholders, and by these means to coerce the plaintiff and the bondholders for whom plaintiff is Trustee to surrender the rights secured to them under the mortgage and under the lease of September 30, 1913, and thereby make possible a settlement agreement acceptable to the stockholders of The Indianapolis Gas Company and to the City of Indianapolis."

It is claimed that the agreement of March 2, 1936, is tantamount to an agreement that no interest shall be paid upon the outstanding bonds by any of the defendants unless and until the city and the Indianapolis Company shall so agree, and that as a result of this agreement default was made in the interest payments due October 1, 1936, and April 1, 1937, aggregating more than $350,000.

Appellant's suit is brought for the purpose of protecting its interest, as trustee, in the security for its bonds, substantially all of which is in the possession of the city, and its right to be paid the interest on such bonds. The court was asked to declare the lease binding upon the city, so that it would be bound to pay the interest on the bonds and to perform and observe all the covenants and agreements of the mortgagor contained in its deed of trust. It was also prayed that the lease be declared binding upon the Indianapolis Company; that it be restrained from interfering with the lease in any way and that

past-due interest be paid from the fund being accumulated in the Indiana National Bank.

In the court below, upon the request of the city for a separate determination of the question of that court's jurisdiction, it was decided that appellee, the Indianapolis Company, was an indispensable party to the suit and that it should be realigned as a party plaintiff, thus destroying the diversity of citizenship upon which federal jurisdiction rested. Appellant's bill of complaint was thus dismissed. Federal jurisdiction of this suit is based solely upon diversity of citizenship, appellant being a citizen of New York and each of the appellees, citizens of Indiana.

The contested issues are:

First. Is the Indianapolis Gas Company an indispensable party to the relief sought by plaintiff in its bill of complaint as amended and supplemented?

Second. Should the Indianapolis Gas Company be realigned with the plaintiff as a party plaintiff for the purpose of testing the jurisdiction of the federal court?

Third. Should the District Court have dismissed, plaintiff's bill as amended and supplemented for want of jurisdiction?

■ We conclude that the first contested issue must be answered in the affirmative. While it seems apparent that the essential question involved is whether the lease in question is enforcible against the city, and that both appellant and the Indianapolis Company are so contending, yet there are other important questions which give rise to controversies between appellant and the Indianapolis Company. There is one thing certain, however, and that is that if the Indianapolis Company be omitted as a party to this litigation, it would be free to relitigate in another court the question of the validity of the lease against the city, irrespective of a final decree in this litigation, which it seems to us would permit an intolerable situation and one "wholly inconsistent with equity and good conscience." To say that the Indianapolis Company is not an indispensable party is the equivalent of granting it permission, either during or subsequent to the present action, to institute suit against the city in the state court and virtually relitigate the same questions, so far as the city is concerned, as are here involved. There are some authorities which apparently sustain appellant's contention, but if so, we find ourselves in disagreement with the application of a theory which is calculated to prolong legal controversies, especially where all the parties are before the court. To view the matter otherwise is to encourage protracted litigation with the rights of innocent parties, such as the bondholders, undetermined for an indefinite time.

Appellant places great stress upon the case of Old Colony Trust Co. v. City of Omaha, 230 U.S. 100, 33 S.Ct. 967, 57 L. Ed. 1410. The plaintiff in that case was the trustee of a mortgage executed by the Omaha Electric Light & Power Company. In a controversy with the city concerning the Electric Company's franchise, that Company (mortgagor) sought to enforce its franchise rights against the city, and the court decided in favor of the latter. Afterwards, a suit was brought by the trustee of the mortgage, which action it succeeded in maintaining. City of Omaha v. Omaha E. L. & P. Co., 8 Cir., 255 F. 801. The city defended this second action, claiming that the first suit was res judicata, but the court held the trust company free to maintain its suit unembarrassed by the decree in the former case. 8 Cir., 216 F. 848. So far as appears from the opinion, no question was raised in either suit as to who were indispensable parties, and in neither were all the parties before the court as here. We do not regard it as controlling.

■ That the Indianapolis Company is at least a proper party is recognized by appellant from the fact that it was named as a party to the suit. Lee v. Lehigh Valley Coal Co., 267 U.S. 542, 45 S.Ct. 385, 69 L.Ed. 782. In Mahon et al. v. Guaranty Trust & Safe Deposit Co., 7 Cir., 239 F. 266, this court gave consideration to the question as to whether a mortgagor is a necessary party in a suit brought by its mortgagee to enforce rights created by virtue of a contract between the mortgagor and third parties. On page 269 is found a citation of many cases in support of each contention. While the facts in that case are different from those here, we think what was said is pertinent. Thus said the court on page 270: "That such company is an indispensable party is clearly shown when we consider the possible, and in fact probable, embarrassment which the courts will meet, if separate actions in respect to this contract can be maintained in different jurisdictions. If this case were to proceed to trial without the traction company and the court upheld the contract and enforced

its terms against the defendant employes, its decision would not be binding upon the mortgagor in a subsequent action. If the traction company were not a party to the action it would have a perfect right to test out the same question in the state court. Such a situation should not be tolerated. The mere statement of the possibilities shows the absolute necessity of making the traction company a party to this action."

Another opinion by this court cited by appellant as supporting its contention is that of Equitable Trust Co. of New York v. Denney et al., 7 Cir., 24 F.2d 169. It is true, in this case the conclusion was reached that the mortgagor, under the situation presented, was not an indispensable party. It seems that we there relied strongly on the fact that a decree in favor of the mortgagee would likewise be favorable to the mortgagor, and that the latter could not be injured or affected by the decree sought. To what extent, if any, the mortgagor here would be benefited by a decree in favor of appellant is conjectural, but we are not dealing with the merits of the controversy, but upon the facts as contained in the bill of complaint. Whatever merit may be involved, there is a controversy between appellant and the Indianapolis Gas Company which is calculated to affect the interest of the latter. We are convinced that the city of Indianapolis is entitled to have both the appellant and the Indianapolis Gas as parties to this litigation for the important reason that it should not be required to relitigate, in the instant forum, or any other, the matters which can be properly determined and forever settled in the present suit.

As to the second controverted issue, we conclude it must be answered in the negative. This answer, of course, is predicated upon the basis that there is a collision of interest between appellant and the Indianapolis Company. The argument of the city to the contrary rests entirely upon the premise that the only matter in controversy is whether or not the lease is enforcible against the city, and that in seeking to maintain the affirmative of that position, the Indianapolis Company is just as much interested as is appellant. Whether they are interested on equal terms is difficult for us to determine from the record. True, Indianapolis Company admits the validity of the lease and at least makes some pretense of claiming it is binding upon the city, but it is rather significant that no effort has been made, and so far as the record discloses, none contemplated, looking toward a favorable determination of its position. In its answer to appellant's bill, it admits most of the material allegations, but some it denies, and concludes by requesting that the bill be dismissed as to it. The city cites a number of cases in support of its contention that the Indianapolis Company must be realigned as a party plaintiff. Lee v. Lehigh Valley Coal Company, supra; Dawson v. Columbia Trust Company, 197 U.S. 178, 25 S.Ct. 420, 49 L.Ed. 713; Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145; Mahon v. Guaranty Trust & Safe Deposit Company, supra. A perusal of these authorities discloses that such realignment has been required when there is no actual controversy between plaintiff and defendant, or no bona fide prayer for relief against it. If it be conceded, however, that appellant and the Indianapolis Company occupy a similar position with respect to the validity and enforcement of the lease against the city, yet we think there are sufficient matters in controversy between them to prevent the latter from being realigned with appellant as plaintiff. The rule seems to be that before such realignment may be required, the parties must be in substantial accord upon all issues presented. Boston Safe-Deposit & Trust Co. v. City of Racine, C. C., 97 F. 817. It is not sufficient that they merely be in accord upon one issue or some of the issues. Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664; Mahon v. Guaranty Trust & Safe Deposit Company, supra; Franz v. Franz, 8 Cir., 15 F.2d 797.

As was said by this court in Mahon v. Guaranty Trust & Safe Deposit Company, supra, 239 F. 266, at page 269: "One of the tests by which the court may determine whether a defendant should be aligned with the plaintiff is the prayer for relief. If no relief is sought against a defendant, such defendant should ordinarily be treated as a plaintiff. Dawson v. Columbia Avenue Trust Co., 197 U.S. 178, 180, 25 S.Ct. 420, 49 L.Ed. 713; Steele v. Culver, 211 U.S. 26, 29, 29 S.Ct. 9, 53 L. Ed. 74. Whether we examine the entire bill or merely the prayer for relief, we must reach the same conclusion, viz. that the traction company and the plaintiff are on the same side of this controversy. We fail to find any collision of interest between them. Both are interested in obtaining the same relief."

Appellant, among other things, is seeking to have the lease declared as part of the security for its bonds, while the Indianapolis Company is adverse to such a declaration; appellant requests that the city be ordered to pay the interest on the bonds direct to appellant, as the Citizen Company had done throughout the term of the lease, but the Indianapolis Company, by entering into an agreement with the city under date of March 2, 1936, seems to assert that the interest should be paid direct to it; appellant also requests that its expenses and attorney fees be paid out of the funds being accumulated in the Indiana National Bank of Indianapolis under the contract of March 2, 1936. Inasmuch as both appellant and Indianapolis Company have an interest in the accumulated funds, and the greater the amount of the recovery by the former, the less there will be for the latter, a controversy of some proportions is calculated to develop.

Appellant also seeks to enjoin the Indianapolis Company from interfering with the lease in any way and to have the lease declared binding upon that company as well as upon the city. While it is true appellant has not seen fit to press its request for such relief, yet it has prayed for the same and who can say, in view of the situation presented, that it may not be required so to do. We are of the opinion that the relation existing between appellant and the Indianapolis Company is such that the latter should not be realigned with the appellant.

Having decided the second controverted issue in the negative, it necessarily follows that the third must be given a like answer.

The cause is reversed with directions to proceed in accordance with the views herein expressed.

TREANOR, Circuit Judge (dissenting).

I agree that the Indianapolis Gas Company is a necessary party to the full determination of the controversy; but I cannot agree that there is any "collision of interest" between the Indianapolis Gas Company and the plaintiff. In my opinion the only substantial, and the dominating question, presented in this suit is whether the lease is a valid and enforcible obligation against the city of Indianapolis. And as respects that question the interests of the plaintiff, as trustees of owners of bonds of the Indianapolis Gas Company, and the Indianapolis Gas Company are identical. I find nothing in the agreement of March 2, 1936, between the city and the Indianapolis Gas Company to create an adversity of interest between the plaintiff and the Indianapolis Gas Company. The terms of that agreement provided for payments by the city pending a determination of the controversy between the city and the Indianapolis Gas Company as to the enforcibility of the lease against the city, and expressly provides against prejudice to the rights of the Indianapolis Gas Company respecting the lease; and in general had as its objective to safeguard against any interruption in the gas utility service and to insure the ultimate payment to the Indianapolis Gas Company of all amounts due under the lease in case the lease finally should be determined to be valid and enforceable against the city.

I think that the District Court's conclusion that the Indianapolis Gas Company was an indispensable party to the controversy but that it should be aligned in interest with the plaintiff was correct. Consequently, diversity of citizenship did not exist as a ground of jurisdiction. And in my opinion the District Court's order of dismissal for want of jurisdiction should be affirmed.